ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*

EWING.

Opinion delivered January 6, 1908.

1. RAILROADS—KILLING STOCK—INSTRUCTION.—In an action against a railroad company for negligently killing plaintiff's horse, an instruction to the effect that if the evidence shows that the horse was found on defendant's right-of-way, and if the jury believe from the nature and appearance of the injuries on the animal, or from its hair, blood, tracks and other signs on the track, if any be shown, that the animal was struck and killed by a train on defendant's track, then "the presumption would arise that the animal's death was due to the defendant's negligence," was not objectionable as charging with regard to matters of fact. (Page 57.)

2. SAME—INSTRUCTION AS TO DUTY TO KEEP LOOKOUT.—An instruction that "it is the duty of all persons running trains in this State upon any railroad to keep a constant lookout for stock upon the track of said railroad" is not open to the objection that it meant that each and every member of the train crew should keep a constant lookout. (Page 58.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; affirmed.

STATEMENT BY THE COURT.

The plaintiff, W. T. Ewing, filed his complaint in the Clark Circuit Court, alleging that the defendant, St. Louis, Iron Mountain & Southern Railway Company, was a corporation, operating a line of railroad through Clark County, Arkansas, that on or about the 1st of December, 1905, through its negligence and carelessness, it ran over and killed a bay mare about nine years old, of the value of $100, belonging to plaintiff, and that defendant failed to post the killing of said mare; and prayed double damages for same, in the sum of $200.

The defendant answered plaintiff's complaint, specifically denying each and every allegation of plaintiff's said complaint, and prayed to be dismissed with its costs.

The trial was had, and a verdict rendered for the value of the mare, in the sum of $87.50, and double damages, for failure to post, in the sum of $175.

A motion for a new trial was filed and overruled, and an appeal granted to the Supreme Court.

The plaintiff introduced the following evidence, in substance:

J. M. Matthews, a witness for plaintiff, testified as follows: Lives close to Curtis; that he saw Mr. Ewing's mare after it was killed, in the edge of a slough near the railroad trestle, about a mile and a half from Curtis, south. Part of the mare's body was in the creek, her head part was lying in the creek. That he saw blood and hair on the tracks where it looked like a train had struck her. Hair was same color as the mare.

Andy McAlister testified in substance as follows: Lives at Curtis; remembers the time it was said Mr. Ewing's mare was knocked off the trestle down below Curtis. It was about the 1st of December. That he saw the animal after it was dead. That he went down to trestle No. 660 to see about a hog he had killed, and when he got there he saw this mare lying over on the east side of the first bend at the south end of the trestle, and he could see that it was a north bound train that struck her, because she was knocked north, and she slid along the ties, and then fell off into the water; there were hair and some blood there. There were tracks all over the dump on

both sides and in the center of the track, both mule and horse tracks; is a farmer and deals in stock; knows the value of stock down there; knows the mare, and considers she would be worth $80 to $100. She was a good brood mare, but does not know about her working qualities; that the mare was not posted at Curtis. Where the mare was killed is a little closer to Curtis than Smithton.

W. T. Ewing, the plaintiff, testified in substance as follows: Lives at Curtis; did not see his mare that was killed until some days afterwards; he never saw it, if the mare was posted. Then he went to the depot and looked to see if it was posted, before he went down to where she was, and looked there afterwards; that he was engaged in the mercantile business, near the depot; that he looked to see if the mare was posted several different times; that he went all around the depot and looked; that he was around and looked at the depot nearly every day for a month and a half or two months, before the claim agent came around; knows the market value of horses and stock down in that place, and considers his mare that was killed worth $100. Would consider $100 her cash value; that he never paid taxes on her, doesn't know what his brother, from whom he traded her, paid. He went down and looked at her. She was about a mile and a half from Curtis; was on the north side of the creek from Curtis; place where she was killed was about a mile nearer Curtis than Smithton. Track is straight for about a mile or a mile and a half in each direction.

This was all the testimony in the case.

The court instructed the jury, upon behalf of plaintiff, as follows, to-wit:

"1. The court instructs the jury, if you find, from the preponderance of the evidence, that the horse was found dead on defendant's right-of-way, and you believe from the nature and appearance of the injuries upon said animal, or from its hair, blood, tracks and other signs on the track, if any is shown, that the animal was struck and killed by a passing train, while on the defendant's track, then, under the rule fixed by the statute, the presumption would arise that the death of the animal was due to the defendant's negligence, and you should assess

the damages at whatever the evidence shows the market value of the animal to be.

"2. The jury are instructed that if they find from the evidence that the animal was killed by the defendant's train, and the defendant failed to have notice of said killing posted at the nearest station house and nearest depot house to the killing within one week thereafter, a true and correct description of the animal killed and where killed, they will find for the plaintiff in double the value of the animal as may be shown by the evidence.

"3. You are instructed that it is the duty of all persons running trains in this State upon any railroad to keep a constant lookout for stock upon the track upon said railroad; and if any stock shall be killed or injured by the neglect of any employees of said railroad to keep such lookout, the company owning and operating such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, and the burden of proof shall devolve upon the railroad company to establish the fact that this duty has been performed."

Defendant filed its motion for a new trial, and, upon it being overruled, has appealed.

*T. M. Mehaffy,* for appellant.

1. The first instruction is erroneous in that it charges the jury with regard to matters of fact. Trial courts are not permitted to draw deductions from facts in evidence. Art. 7, § 23, Const.; 25 S. W. 505; *Id.* 282; 45 Ark. 492; *Id.* 165; 72 Ark. 572; 58 Ark. 108; 53 Ark. 381; 63 Ark. 457; 66 Ark. 506; 73 Ark. 568. In instructing the jury isolated facts should not be singled out, but the instruction should be so framed that all parts may be considered by the jury. 75 Ark. 86; 62 Ark. 286; 57 Ark. 512; 37 Ark. 333; *Id.* 593; *Id.* 238.

2. The second instruction should not have been given, since there was no evidence to show either that the appellant within and for the length of time required by law did not post a description of the animal killed, or that any conductor or engineer of appellant knew of the killing.

3. The third instruction has been held by this court to be

erroneous in 65 Ark. 619; *Id.* 429; 64 Ark. 236. Moreover, it is entirely abstract, assumes that no lookout was kept by *all* of the persons running the train, and placed the burden upon the defendant to prove that all persons running the train kept a lookout.

*McMillan & McMillan,* for appellee.

1. The manner of the killing is not disputed in the evidence, and the court may always state undisputed facts to the jury; and, since this undisputed testimony shows that the animal was killed by one of appellant's trains, the statutory presumption of negligence was thereby raised, and the first instruction was, therefore, correct. 76 Ark. 227; 60 Ark. 189; *Id.* 485; 42 Ark. 126; 69 Ark. 632.

2. There was sufficient evidence on which to base the second instruction. The evidence must be given its strongest probative force in favor of the verdict. 76 Ark. 115.

3. No error in the third instruction. 71 Ark. 317; 73 Ark. 594.

4. If the verdict upon undisputed evidence is right, there is no error in giving an erroneous instruction. 75 Ark. 328.

HART, J., (after stating the facts.) Counsel for appellant claim that the first instruction is erroneous because it is a charge with regard to matters of fact. It was incumbent upon appellee to show that the death of the animal was occasioned by the train of appellant, in order to raise the statutory presumption of negligence. *Ry. Co.* v. *Parks,* 60 Ark. 189. There was no eye witness to the killing, and the circumstances detailed in the first instruction were proved to show that the horse was killed by appellant's train. These facts were undisputed, and were all the testimony on that point, and therefore the instruction was equivalent to saying to the jury: "If you believe from the evidence that the animal was killed by a passing train, etc."

Appellant objects to instruction No. 2, because there is no evidence to show that the killing was not posted as required by law. Appellee testified that his place of business was near the depot house, and that he at different times examined all sides of the building for the purpose of finding the notice of the description of the animal killed, and that he failed to find it; that

he made such examination at frequent intervals for more than one month next after the animal was killed.

The third instruction was loosely drawn, but it is not open to the objection that it meant that each and every member of the train crew should keep a constant lookout. *St. Louis, I. M. & S. Ry. Co.* v. *Norton,* 71 Ark. 317.

Affirmed.