MIDLAND VALLEY RAILROAD COMPANY *v.* SKINNER.

Opinion delivered June 5, 1911.

1. RAILROAD—PRESUMPTION OF NEGLIGENCE.—The mere fact that a horse was found in an injured condition near a railroad track raises no presumption that the injury was done by a train.  (Page 372.)

2. SAME—KILLING OF ANIMAL BY TRAIN.—Proof that a horse was seen, apparently in good health, feeding in a field by defendant's railroad track, and that a few hours later he was found lying dead near the track, that his tracks were found leading across the railroad track from the field, and that he was struck upon the hip, are sufficient to justify a finding that he was injured by defendant's train.  (Page 372.)

3. SAME—KILLING OF ANIMAL BY TRAIN.—That defendant's train killed plaintiff's horse need not be proved by a witness who saw the train strike him; it could be proved by circumstances from which it could be reasonably inferred that the train killed him.  (Page 372.)

4. WITNESSES—IMPEACHMENT—LAYING FOUNDATION.—Testimony to impeach a witness which is incompetent when introduced because no foundation for the impeachment has been laid may become competent when such foundation is subsequently laid.  (Page 372.)

5. RAILROAD—INJURY TO ANIMAL BY TRAIN—PRESUMPTION.—Where plaintiff adduced evidence sufficient to warrant the jury in finding that a railroad train killed his horse, a presumption arises that the operation of the train was negligent, but the presumption may be rebutted.  (Page 373.)

6. SAME—KILLING OF STOCK—INSTRUCTION.—In an action against a railroad company for negligently killing plaintiff's horse, where there was evidence tending to rebut the statutory presumption of negligence on defendant's part, it was error to refuse to charge the jury that "if the evidence shows that the horse was killed by defendant's train, then if the evidence shows that such killing was not the result of negligence on the part of the defendant, the jury should find for the defendant."  (Page 373.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon,* Judge; reversed.

*Ira D. Oglesby,* for appellant.
*Holland & Holland,* for appellee.

FRAUENTHAL, J.   This was an action to recover the value of a horse which appellee alleged was negligently killed by the appellant in the operation of one of its trains.   The jury returned a verdict in favor of appellee.   There are three assignments of error made why the judgment should be reversed:

· (1) That there was not sufficient evidence to sustain the verdict; (2) because error was committed in permitting the introduction of certain testimony; and (3) because the court erred in refusing to give an instruction requested by appellant.

The case, briefly stated, is this:   Between 2 and 3 o'clock on the afternoon of December 15, 1908, appellee found his horse lying dead about ten or twelve feet on the north side of appellant's railroad track.   A few hours before that he had received the information that appellant's section foreman had sent word that his horse was sick and lying by the side of the track.   About 9 o'clock in the morning of the same day the horse was seen feeding in a stalk field on the south side of and near to the railroad track.   And about 9:30 o'clock of the same morning one of appellant's trains passed this place going west.   No witness testified that he saw the train strike the horse.   Tracks of the horse were found leading from the stalk field on the south side of the track in a northwesterly direction and across the track to the place where the dead horse was found.   From the description of these tracks, it would appear that the horse had run across the track, and when his body was discovered grass was found in his mouth similar to that where he had been seen in the morning feeding.   There was some testimony indicating also that he was injured or "broke down" in his loins.   No blood or hair of the horse was found, however, on the track, and there was no outward mark on the horse indicating where the train struck him.

The engineer and fireman who were on defendant's train which passed this place at 9:30 o'clock on the morning in question testified that they did not see the train strike any horse, but that they did see the horse lying on the north side of the track where its dead body was subsequently found.   Some time after this train had passed, but at exactly what hour the testimony does not disclose, the appellant's section foreman in distributing ties at this place discovered the horse lying on the north side of the track breathing heavily, but still alive, and, believing that he was sick, he sent word to appellee to that effect.

From these facts and circumstances we think that there was some evidence from which the jury were warranted in finding that the horse was struck by appellant's train. The mere fact that the horse was found near the track and injured was not sufficient to prove that the injury was done by one of defendant's trains, and no presumption to that effect would arise simply from proof of that fact. *Railway Co.* v. *Sageley,* 56 Ark. 549; *Railway Co.* v. *Parks,* 60 Ark. 187.

But, in order to prove that the appellant's train did strike the horse, it was not necessary that some witness should actually have seen the train strike him. This could be proved by facts and circumstances from which it could be reasonably inferred that the train did strike the horse. The horse was seen feeding in a stalk field at 9 o'clock in the morning, and its dead body was found lying near the track between 2 and 3 o'clock of the same day. The horse therefore either became suddenly sick from some unknown cause and died therefrom, or he was struck by the train. The testimony tended to show that he had been in perfect health, and was in perfect health on the morning of the day in question, and the grass that was found in his mouth indicated that he had been feeding in the stalk field. There was some testimony from which the jury could have found that he ran across the track in front of the moving train, and was struck by it on the hip. *Little Rock & Ft. S. R. Co.* v. *Wilson,* 66 Ark. 414.

Upon the trial of the case, the court permitted appellee, in the introduction of his testimony in chief, to prove by a witness that a few days after the dead horse was found the engineer stated that he knew the engine had not struck the horse because he had examined the pilot at the first stop, and there was no sign thereon of hitting the horse. This evidence was only competent to impeach the engineer, who later during the progress of the trial was introduced by appellant and testified that when he passed the place where the horse was found he saw the horse lying on the north side of the track, and that he did not cross the track, and therefore could not have been struck by the train. But this impeaching testimony could only be introduced after the foundation had been laid therefor by asking the engineer whether he had made such statement to the witness. It was therefore erroneous to have permitted the question to be asked of the witness and the

answer to be given before the engineer had testified and before he had been examined relative thereto. The engineer, however, was afterwards introduced as a witness in the case, and he was asked whether he had made such statement to this impeaching witness, which he denied. Although it was erroneous to permit the introduction of this impeaching testimony at the time at which it was introduced during the progress of the trial, it was not prejudicial because the witness whom it was the purpose to impeach was subsequently examined relative thereto and sufficiently to lay a foundation for its introduction. *Ware* v. *State,* 91 Ark. 555.

Appellant requested the court to give the following instruction to the jury, which was refused: "If the evidence shows that the horse was killed by defendant's train, then if the evidence shows that such killing was not the result of negligence on the part of the defendant, the jury should find for the defendant." We are of opinion that the court erred in refusing to give this instruction to the jury. When the plaintiff proved certain facts and circumstances from which the jury could reasonably infer that the horse was injured by the operation of one of appellant's trains, then the presumption arose that this injury resulted through the negligence of the defendant. *Little Rock & Ft. S. R. Co.* v. *Payne,* 33 Ark. 816; *Memphis & L. R. Ry. Co.* v. *Jones,* 36 Ark. 87; *St. Louis, I. M. & S. Ry. Co.* v. *Vinson,* 36 Ark. 451; *St. Louis, I. M. & S. Ry. Co.* v. *Hagan,* 42 Ark. 122.

But this presumption of negligence against the railroad company could be rebutted by proof that at the time of the injury complained of the company did exercise due care and diligence and was free of negligence. *Little Rock & Ft. S. Ry. Co.* v. *Henson,* 79 Ark. 413; *St. Louis & S. F. Rd. Co.* v. *Basham,* 47. Ark. 321.

The proof showing that the injury to the horse done by the operation of one of appellant's trains was caused by no act of negligence on the part of the appellant or its employees might result from testimony that was adduced at the trial, either by the appellee or by the appellant. The testimony on the part of the appellant tended to prove that its employees in charge of the train kept a constant and effective lookout at the time it passed the place where it was alleged appellee's horse was injured. From

the facts and circumstances adduced in evidence on the part of the appellee, the jury might have found that the horse, which was feeding in a stalk field on the south side of the track, ran so suddenly upon the track and across it that it could not have been discovered by the trainmen in time to have avoided the injury, although such constant and effective lookout was kept by them, and although they had used due care in the operation of the train.

We think, therefore, that under the facts and circumstances of this case it became a question for the jury to say whether or not the presumption of negligence arising from any injury done to the horse by the operation of the train was rebutted by this proof of facts and circumstances. We are therefore of the opinion that there was some testimony upon which to base the instruction requested by the appellant. It follows that the judgment must be reversed, and the cause remanded for a new trial.