FENTON v. DE QUEEN & EASTERN RAILWAY COMPANY.

Opinion delivered February 19, 1912.

1. RAILROADS—KEEPING LOOKOUT FOR STOCK—INSTRUCTIONS.—In an action for killing stock, it was error to refuse to instruct the jury that "you are instructed that the law makes it the duty of persons running trains in this State upon any railroad to keep a constant lookout for stock upon said railroad, and if any stock shall be injured by the negligence of such persons to keep a lookout the company owning and operating such railroad shall be liable to the owner of such stock so injured

for all damages resulting from such neglect, and the burden of proof shall devolve upon the railroad company to establish the fact that this duty has been performed." (Page 391.)

2. SAME—KEEPING LOOKOUT FOR STOCK—INSTRUCTION.—An instruction to the effect that the railroad company was liable for injuries to stock caused by the failure of the trainmen to keep a lookout was properly given though the engineer and fireman of the train supposed to have killed the animal both testified that they were keeping a lookout and failed to see the animal if there were circumstances from which the jury might have inferred that the animal was killed by defendant's train. (Page 391.)

3. SAME—PRESUMPTION.—No presumption arises from the finding of an animal injured near a railroad track that such jury was caused by the running of a train. (Page 391.)

4. SAME—STOCK KILLING—PRESUMPTION OF NEGLIGENCE.—Where the jury finds from the circumstances that an animal was killed by the running of a train, a presumption arises that it was negligently done; but this presumption of negligence may be rebutted by proof that at the time complained of the company did exercise due care. (Page 392.)

5. SAME—NEGLIGENCE—INSTRUCTION.—It was not error in an action for negligently killing stock to refuse to instruct the jury that "if the jury believe from the evidence that the animal in question was injured by defendant's train you will find for the plaintiff," since it permitted a recovery regardless of defendant's negligence. (Page 392.)

6. SAME—NEGLIGENCE—INSTRUCTION.—It was not error, in an action to recover for stock negligently killed, to refuse to give an instruction which would make the statutory presumption of negligence arising from proof that the stock was killed by defendant's train a conclusive, instead of a rebuttable, presumption. (Page 392.)

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellant brought suit to recover damages for the value of a mare, alleged to have been negligently struck by a train on appellee's road, and so injured as to be entirely worthless. The railroad company denied injuring the mare by the operation of any of its trains.

The testimony tended to show that the line of railroad where the animal was discovered to be injured runs east and west, with a fence on the north side of and parallel to it, which turns a little to the north just before its intersection with the

creek running north and south along the railroad at the Bear Creek trestle or bridge. The mare was found between the borrow pit and this fence, just west of the creek and off the edge of the right-of-way, and when found had a hole in her side just back of the bulge of the ribs, with some deep cuts across the front of her hind legs, near where they joined the body, the flesh seeming to be stripped down, with other slight cuts and bruises upon her. Her value was practically destroyed by the injury, from which she thereafter died, being abandoned by appellant.

Some tracks of horses were discovered coming on to the railroad dump about thirty yards west of opposite where the animal was found injured. The tracks of one being between the rails of the railroad track, and just about opposite the place where this animal was standing, the one that had been running in the center of the track left the railroad coming down the dump into the borrow pit. Some of the witnesses also said there were tracks leading out of the borrow pit towards the place where the injured mare stood. It had rained all the morning of the day upon which appellant heard, late in the afternoon, that his mare had been found injured, and he saw her the next morning. There was no indication, other than the tracks aforesaid and the wounded animal, indicating that she had been struck by a train, there being no blood or hair found upon or near the track, nor upon the engine nor any of the rolling stock. The animal had been in a pasture with two other mares and some horses, partly inclosed with a plank and barbed-wire fence, but there was a gap in the fence next to the railroad not a great distance from where she was found.

The case was tried on the theory that she was stuck by the train leaving De Queen at 9:30 on the morning of the 19th. The engineer of this train testified that they left the station at 9:30 on that morning; that the train did not strike any horse or mare near the Bear Creek bridge that morning; that he could see a point near the bridge from the engine cab down the track for 1,500 feet; that he was sitting on the engineer's side of the cab looking down the track, and that he did not see a horse or mare as he passed; that the fireman was also at his post of duty on the opposite side looking ahead; that he

saw Mr, Kelly, who with his little boy on a speeder, had gone out just ahead of the train, who took it off the track about 300 or 400 feet beyond the Bear Creek bridge; that the speeder was only removed two or three feet from the track and not taken into the borrow pit; that Mr. Kelly started out a few minutes before the train left, and he was looking out for him; that in the afternoon returning no horse or mare crossed the tracks in front of him, and that he didn't see any one along there that afternoon.

The fireman's testimony was about like that of the engineer, both saying they had talked with Mr. Kelly before his leaving the station ahead of the train and were on the lookout for him, the fireman saying that Mr. Kelly took the speeder off the track about fifty feet beyond the Bear Creek bridge; that he knew the train did not strike a horse or mare approaching the bridge that morning, for he was sitting upon his seat looking out all the time and had a clear view for a quarter of a mile; that he distinctly remembers having kept a lookout that morning on approaching the bridge. He learned the next morning of appellant's claim that his mare had been injured. She was found about seventy-five feet from the track. The fireman testified that she was pretty badly cut up on her two hind legs, and that there was a bad place on her side; that the place on the side was in a triangle, cut two ways, and about ten inches long. It was about fifteen wide. "We found where the horse had walked up the track. We found where one foot had slipped. I did not see any other tracks there. There were some along the ends of the ties, that looked dimmer than them, older possibly. A good many horses and cattle ranged along this particular point."

On cross examination, he stated that he wasn't looking for horses that morning, but for Mr. Kelly, who was ahead of them on the track on a speeder.

Mr. Kelly testified that he went out on the track on a speeder that morning, and that the train passed him about 100 feet from the second bridge on the De Queen & Eastern Railroad; that the train passed the point where the mare is claimed to have been hurt about two or three hundred yards behind him; that he did not see the mare when he passed there. Looking west from the point where the train passed him, he could see an

object on the track for a quarter of a mile, and the train did not strike the mare that morning, he knew.

Some witnesses testified that they went up and down the wire fence, and didn't find any blood or hair, indicating that a horse had been hurt upon it. · It had rained on the animal since she was crippled. Some of the witnesses also said that she could not have been struck by a train and injured as she was, without some indication of the fact appearing upon the railroad track or the train. ·

The court instructed the jury, giving instruction one, as requested by appellee, as follows:

.   "The fact that the mare in controversy was found injured near the tracks of the defendant company raises no presumption that she was injured by the defendant, and the burden of proof is upon the plaintiff to show by a preponderance of the evidence in the case that she was injured by the defendant company and the amount of damages sustained, if any."

Also gave instruction numbered 3, requested by appellant, as follows:

"The court instructs the jury that if you find for the plaintiff you will assess his damages at such sum as you find from the testimony to be the difference between the reasonable market value of the mare just prior to the injury and her reasonable market value immediately after the injury."

And refused, over plaintiff's objections, his requested instructions, numbered 1, 2 and 4, as follows:

"1.   You are instructed that the law makes it the duty of persons running trains in this State upon any railroad to keep a constant lookout for stock upon said railroad; and if any stock shall be injured by the negligence of such persons to keep such a lookout, the company operating such railroad shall be liable to the owner of such stock so injured for all damages resulting from such neglect, and the burden of proof shall devolve upon the railroad company to establish the fact that this duty has been performed."

"2.   If the jury believe from the evidence that the animal in question was injured by defendant's train, you will find for the plaintiff."

"4.   The jury are instructed that it is not necessary, in order for the plaintiff to recover, that he show by direct evi-

dence that the animal was injured by the train, but that the injury of the stock by a train may be proved by circumstantial as well as by direct evidence; and if you believe from a preponderance of the evidence, taking into consideration the place where the injured animal was found, the nature and appearance of the injuries upon the said animal, tracks and other signs upon the track, if any be shown, together with all the other facts and circumstances given in evidence, that the animal was struck and injured by a passing train, while on defendant's tracks, then, under the law, the presumption would arise · that the injuries to the animal was due to the defendant's negligence, and you should find for the plaintiff,"

The jury returned a verdict for the defendant, and from the judgment appellant appealed.

*Otis T. Wingo,* for appellant.

*Collins & Collins,* for appellee.

KIRBY, J., (after stating the facts). The instruction, numbered 1, as requested, should have been given. *St. Louis, I. M. & S. Ry. Co.* v. *Ewing,* 85 Ark. 53; *St. Louis, I. M. & S. Ry. Co.* v. *Norton,* 71 Ark. 317.

It is insisted by learned counsel for appellee that there was no testimony upon which to base such instruction, and that no prejudice could have resulted from the failure to give it, since the undisputed testimony shows that the employees did keep the lookout required by law, the engineer and fireman both having testified they were keeping a lookout at the time and that the injury was not done by that train.

It is true that no witness testified that the animal was struck by a train, but she was found near the track badly injured, opposite where a horse's tracks left the track of the railroad, after having come down the track for fifty or sixty yards between the rails, the tracks of other horses showing on the sides of the dump and at the ends of the ties, and the jury might have inferred from all the facts in evidence that she was injured by the running of a train on appellee's road, either by the one upon which the employees testified a lookout was kept, or another train.

No presumption arises from the finding of an animal injured near a railroad track that it was done by the running of

trains, as the court properly told the jury in its instruction numbered 1. *Railway Co.* v. *Sagely,* 56 Ark. 549; *Railway Co.* v. *Parks,* 60 Ark. 187; *Midland Valley Rd. Co.* v. *Skinner,* 99 Ark. 370. It is only after proof of facts and circumstances from which the jury can reasonably infer that the animal was injured by the operation of a railroad train that the presumption arises that it was negligently done. "But this presumption of negligence against the railroad company could be rebutted by proof that at the time of the injury complained of the company did exercise due care and diligence and was free from negligence." *Midland Valley Rd. Co.* v. *Skinner, supra.*

When sufficient proof is introduced to convince the jury that the injury to the animal was caused by the operation of the train, then the presumption that the injury was the result of the railroad company's negligence arises and tends to contradict the testimony of the employees that a proper lookout was kept, and it can not be said that the the evidence of such employees was undisputed. This presumption of negligence is rebuttable, however, and, if the jury believed from the evidence that a proper lookout was kept, and the animal was not discovered, it is rebutted, for it might have come upon the track so close to the approaching train that the injury could not have been avoided, without regard to whether a proper lookout was kept or not, although no evidence of this kind was introduced in this case.

Instruction numbered 2, as requested, was properly refused, since it directed a finding against the defendant if the animal in question was injured by one of its trains, without regard to whether it was negligently done or not.

Instruction numbered 4 was subject to like objection, in that it, after properly stating that the injury to the animal could be proved by circumstantial evidence, etc., told the jury that if they believed from a preponderance of the evidence, taking the facts and circumstances into consideration, that the animal was injured by a train, the presumption would arise that it was negligently done, and directed them to find for the plaintiff. The direction was not proper, since it had the effect to declare the presumption of negligence conclusive.

No other instruction, defining the duty of appellee to keep a lookout for stock upon its track, while in the operation

of its trains, being given, for the court's error in refusing to give appellant's instruction numbered 1 the judgment is reversed, and the case is remanded for a new trial.