Leon DILLARD *v.* STATE of Arkansas

CR 81-118                                        629 S.W. 2d 291

Supreme Court of Arkansas
Opinion delivered March 15, 1982

*Wayne R. Williams,* of *Williams & Williams,* for appellant.

*Steve Clark,* Atty. Gen., by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. The narrow issue in this case is whether the appellant waived his right to a lawyer before he gave an incriminating statement. Leon Dillard, the appellant and city treasurer of Glenwood, Arkansas, was suspected of stealing city funds. On February 28, 1980, several law enforcement officials met with Dillard and informed him that he was suspected of theft. He signed a form acknowledging that he had received the *Miranda* warnings and later signed a statement admitting, "I have taken some money, but I also believe that some money is missing in which I have had no part. . . Amount of money that I took that I remember is about $3,000.00."

Dillard was convicted and on appeal challenges the trial court's finding that his statement was admissible. He cites *Miranda* v. *Arizona,* 384 U.S. 436 (1966) and *Edwards* v. *Arizona,* 451 U.S. 477 (1981) as controlling.

The prosecuting attorney's investigator, Joe White, and the sheriff were present when Dillard made his statement. They both conceded that Dillard said he wanted a lawyer when informed of his rights. But both insisted that Dillard continued the conversation, asking them questions, and, thus, waived his right to counsel. The exact testimony is important.

White testified:

> . . . I told him then that his rights statement that he signed was not a waiver of his rights. I had to ask him the question, 'Did he want to talk to us?' And he said, 'Well, I better get a lawyer.' I said, 'Fine. You need to go get a lawyer.' And he said, 'But I want to know what this is all about.' We told him there was some money missing at Glenwood, and he continued the conversation. *We told him then, again; in fact, he was told several times he shouldn't say any more if he was going to get a lawyer to leave, but he continued his conversation.* We didn't feel like that we were obligated to run off ourself. [Emphasis added.]

Q.   All right.

A.   But after he said he was going to get a lawyer, he himself waived again and said, 'Well, I will talk to you without one right now, and I can quit when I want to.'

The sheriff testified:

Q.   What was done by you and Mr. White and anybody else that might have been there at that time about that; what was said about that, if you remember?

A.   If I recall the conversation, I believe you were present at that time; and if I recall your statement that possibly he might ought to go ahead and get an attorney.

Q.   Did he choose to do it?

A. Well, he continued to ask questions of us, you know, at that time.

Q. Did he then proceed to make a voluntary statement without being interrogated any further?

A. Sure did.

Q. In other words, after he mentioned that he thought that he might should talk to an attorney, was there any interrogation as such continued — that continued?

A. There might have been some questions asked, but I don't recall if there was.

Q. Well, you already testified that after he indicated that he might should talk to a lawyer that he was told that he probably should?

A. I know that he had asked some questions, and we tried to provide answers for them, and we may have asked some questions, but I don't recall.

Q. At any rate, after he indicated that he thought maybe he should talk to a lawyer, he was given every opportunity to do so; is that correct?

A. Yes, sir.

*Edwards* v. *Arizona, supra,* held that once a suspect requests counsel, questioning must cease and cannot be reinitiated by the police. Therefore, the question is whether the police initiated the further questioning or was the conversation begun by Dillard; in other words, what action amounts to "interrogation" by the police after a suspect has requested counsel? *See Rhode Island* v. *McInnis,* 446 U.S. 291 (1980). Undoubtedly it is purely a fact question in some instances, as it is in this case. On appeal we review such matters independently, considering the totality of the circumstances and do not reverse the trial court unless the ruling was clearly erroneous. *Coble* v. *State,* 274 Ark. 134,

624 S.W. 2d 421 (1981). On the record in this case we cannot reverse the finding.

The appellant in passing argues that two other statements given by Dillard used to impeach him were tainted because they were a result of his first statement. Those two statements were given without a prior *Miranda* warning. *Harris* v. *New York,* 401 U.S. 222 (1971) held that statements which are given voluntarily but without a prior *Miranda* warning can be used to impeach the credibility of a defendant who testifies in his own behalf.

Affirmed.