Robert D. FUTCH *v.* STATE of Arkansas

CR 85-155                                       705 S.W.2d 11

Supreme Court of Arkansas
Opinion delivered March 10, 1986

*Henry & Mooney*, by: *Wayne Mooney*, for appellant.

*Steve Clark*, Att'y Gen., by: *Charles R. Lucus*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Robert Futch shot and killed his former wife, Bonnie Futch, at her mobile home in Poinsett County, Arkansas. He was convicted of first degree murder and sentenced to life imprisonment. Futch argues that statements he made to police officers before he was warned of his rights should have been excluded and that the state should not have been

allowed to impeach his testimony with a prior statement. We find no prejudicial error and affirm.

The authorities first learned of the incident by a telephone call from Futch's sister in Arizona. They were told that there had been a shooting at Mrs. Futch's residence and the investigating officers knew nothing more. They proceeded to the residence and knocked on the door. Futch answered and said, "Can I help you?" Officer Fleming asked if everything was all right and Futch said it was. The officers asked if his wife was home and Futch said, "Yes, sir, she is, she is dead." They asked, "Who shot her?" and Futch replied, "I did."

█ The trial judge properly permitted introduction of these statements. The fact that Futch was not given the warning of his rights provided for in *Miranda* v. *Arizona*, 384 U.S. 436 (1966), does not preclude the use of this evidence. Futch was not in custody, nor was the investigation focused on him. Initially the officers did not even know if a killing had occurred. In *Miranda* the Court stated:

> The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way.

> \* \* \* \*

> General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding . . . . In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.

█ In three very similar cases we have held such statements are admissible. *Ward* v. *State*, 272 Ark. 99, 612 S.W.2d 118 (1981); *Chenault* v. *State*, 253 Ark. 144, 484 S.W.2d 887 (1972); *Stout* v. *State*, 244 Ark. 676, 426 S.W.2d 800 (1968). The trial court also admitted two statements Futch made while he was in the police car en route to the station. Officer Toddy testified that Futch was not questioned and that he spontaneously stated, "I did

what I had to do." Toddy testified Futch also said at the station, "he had ended his problem, that he didn't have a problem anymore." Futch argues broadly that all statements should have been excluded, but does not contend that he was questioned by Toddy; there is no evidence that he was. The trial court was not wrong, then, to permit these statements to be admitted. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 435 (1984).

■ When Futch arrived at the station and was given his *Miranda* warnings, he said he wanted to talk to a lawyer. Ignoring this, an officer proceeded to question him and took a statement from him. The trial judge properly excluded this statement as taken in violation of *Edwards* v. *Arizona*, 451 U.S. 477 (1981). Once a suspect in custody indicates he wants to talk to a lawyer, all questioning must cease and cannot be resumed by the state. *State* v. *Branam*, 275 Ark. 16, 627 S.W.2d 8 (1982); *Dillard* v. *State*, 275 Ark. 320, 629 S.W.2d 291 (1981).

Both Futch and Frances English, Futch's cousin who was present in the home and witnessed the shooting, testified. Futch said he had been drinking heavily that day. He called his former wife and wanted to talk to her. She agreed to let him come over. Futch arrived on the afternoon of July 29, 1984, between 2 and 4 p.m. Frances English was there with her daughter, son-in-law and grandchildren. Futch talked with them for a while, then English's daughter, son-in-law and grandchildren left. According to Futch, he got a gun out of the closet in the bedroom of the trailer because he was afraid the children would find it. He returned to the kitchen, was sitting at a table, and asked Bonnie to sit down. He said she said something smart to him, and he just shot her. He said he could not remember any more. He denied any intention of going there to kill her or even contemplating shooting her. Frances English said she did not see Futch with a gun until she heard Bonnie say, "Oh, my god, Bob, don't do this." When she saw that Bonnie was shot, English ran outside. Futch followed and persuaded her to return. They called his sister in Arizona and Futch told her that he had shot Bonnie.

This brings us to the second issue. On cross-examination the state asked Futch if he remembered talking to Officer Jim Furnish. Futch said he did not. Then the state asked, "And you don't remember telling him that you were sorry that you shot the

little girl, but she *needed* it." (Italics supplied.) Futch said no. The defense attorney objected to the questioning. After the defense rested, the state announced that it would call Officer Furnish on rebuttal to testify that Futch had said "he hated to do it to the little girl, but she *needed* it." (Italics supplied.) This officer had testified at the suppression hearing that Futch had said "he hated to do it to the little girl, but *he did what he had to do.*" (Italics supplied.) This is one of the statements that the trial court suppressed from the case-in-chief.

After Officer Furnish testified on rebuttal that Futch had said that Bonnie Futch "needed it," the defense attorney objected that he had not been furnished with a copy of this new version of the statement before trial and that the statement had been ruled inadmissible. In *Harris* v. *New York*, 401 U.S. 222 (1971), the United States Supreme Court ruled that the state could properly impeach the defendant's credibility on cross-examination with earlier statements he made which conflicted with his trial testimony if the statements were trustworthy. On appeal Futch argues that Officer Furnish's testimony does not meet the *Harris* requirements for two reasons. He contends that the statement testified to by Officer Furnish was not inconsistent with his trial testimony and that the testimony was not trustworthy because Officer Furnish changed his version since the suppression hearing.

If Futch did indeed say that Bonnie Futch "needed" killing, that would certainly contrast with his testimony at trial that he just shot her while he was drunk because she made a smart remark and that he had not intended to do it. Whether or not Officer Furnish's testimony was credible was an issue for the jury. The defense cross-examined him and he admitted that he had given a different version at the suppression hearing. It was for the jury to decide which version was the truth. Futch also argues that he was prejudiced by the trial court's failure to give a cautionary instruction which would have told the jury that the statement was to be considered only for impeachment purposes and not as substantive evidence of Futch's guilt. The trial court agreed to give the instruction but evidently forgot. Between the time the court offered to give it and the time Officer Furnish testified there was another witness who testified. We find that it was incumbent upon the defense to remind the trial court to give the instruction.

Furthermore, the jury had already heard evidence that Futch had admitted the killing. We find no prejudicial error in failing to give the limiting instruction.

The trial court found no substantial difference in the two statements. We agree the disparity is so slight that it amounts to the classic distinction without a difference. Either statement could be used, arguably, to show that Futch had the necessary intent to support a conviction for first degree murder. We think the trial court's decision was not clearly wrong or an abuse of discretion.

Under Ark. Stat. Ann. § 43-2725 (Repl. 1977), as put into effect by our Rule 11 (f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.

Affirmed.

PURTLE, J., not participating.