Todd Jarrell SWANSON *v.* STATE of Arkansas

CR 91-174                                   823 S.W.2d 812

Supreme Court of Arkansas
Opinion delivered January 21, 1992

*John Wesley Hall, Jr.*, and *Craig Lambert*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant, Todd Swanson, was convicted of rape and burglary and was sentenced to thirty (30) years in prison. Although the sentence is not for "more than 30 years imprisonment," as prescribed by Rule 29 (1)(b) of the Rules of the Supreme Court and Court of Appeals, we accepted appellate jurisdiction on the basis of the appellant's statement that the case involves DNA profile evidence, an issue of significant public interest and major legal importance. *See* Ark. Sup. Ct. R. 29(4)(b). A complete review of the six (6) assignments of error, and numerous subpoints, reveals that there are no matters of first impression, and we affirm the judgment of conviction.

The appellant argues that the evidence is insufficient to sustain the convictions for rape and burglary. We review the sufficiency of the evidence prior to the consideration of the other asserted trial errors because, if the evidence is insufficient, the other asserted errors do not matter. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). The appellant makes two (2) arguments involving insufficiency of the evidence for the rape conviction under this initial point. First, he argues that there is insufficient proof of penetration, and second, he argues that there is insufficient proof of forcible compulsion. *See* Ark. Code Ann. § 5-14-103(1) (1987).

The prosecutrix testified that on the night of June 7, 1989, she was asleep in her home. A man entered her bedroom, bound her hands and ankles with tape, placed a pillow over her face, and "had sex" with her. After having had sex, the attacker bound her

hands and ankles with a sheet and left a note telling her that she would not be harmed and that she should not call the police. The prosecutrix testified about her mental state: "I was afraid I was going to be murdered and one of my children would find my body so I just kept telling him that I wouldn't call the police if he would just go away and leave me alone." After the attack, the prosecutrix called the prosecuting attorney, Ron Fields, who took her to a hospital for a rape examination. The police could not find any evidence of a forced entry into her home.

The appellant is the prosecutrix's next door neighbor, and he knew she had a key to her home hidden under an oil can outside her house. The appellant confessed to the crimes. In his confession he admitted that he got the key from under the oil can, opened the door, and went into the proxecutrix's house:

> After going in the house, I went into [prosecutrix's name deleted] bedroom and she was asleep and she woke up when I came into the room. I covered her eyes and mouth with my hands and turned her over and tied her hands with the tape that I had brought from my garage. I then turned her over on her back and I had sexual intercourse with her. I at first covered her eyes with my hand and later used a pillow.

The appellant then stated that after he had an orgasm, he turned her back over and bound her more tightly and left.

■ An emergency room physician testified that he performed an examination of the prosecutrix on the night of the attack and his findings were consistent with sexual intercourse having occurred. The physician took semen samples from the vagina of the prosecutrix. Later, blood samples were taken from the appellant. The samples taken from the vagina of the prosecutrix and the samples taken from the appellant's blood were compared through the use of DNA profiling and were found to match. The chance given of an incidental match was one in eighty-four million. In sum, the evidence of rape is not only sufficient, it is overwhelming.

■ The appellant additionally argues that the evidence is insufficient to support the conviction for burglary. Again, the evidence is overwhelming, and we only summarily treat the issue.

The prosecutrix testified that the attacker illegally entered her house and raped her, and the appellant admitted he illegally entered the prosecutrix's house and raped her. Such proof is sufficient. *See* Ark. Code Ann. § 5-39-201 (1987).

■ Next, the appellant urges us to reverse the trial court, based on any one of three (3) arguments, for permitting F.B.I. special agent Lawrence Presley to testify about DNA profiles and statistics. The first argument is that evidence of DNA profiling is insufficiently reliable. In *Prater v. State*, 307 Ark. 180, 194, 820 S.W.2d 429 (1991), in discussing this same issue, we wrote: "[W]e have no hesitancy in affirming the trial court's ruling that DNA testing is such a sufficiently reliable scientific procedure that it may be admitted in evidence." We need not repeat the reasoning used in *Prater, supra.*

■ The second argument is that the probative value of the expert testimony about DNA profiling was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Again, as set out in *Prater, id.* at 190, 820 S.W.2d 429:

> The trial court must then weigh its assessment of the reliability of the novel scientific evidence against the danger that the evidence, even though reliable, might nonetheless confuse or mislead the finder of fact. In that weighing process, the trial judge must keep in mind the "presumption of helpfulness" accorded expert testimony generally under A.R.E. Rule 702. "The relevancy approach favors admissibility whenever the general conditions for admissibility of evidence have been met." [Citation omitted.]

The evidence concerning DNA profiling was beyond the knowledge of the average juror and was helpful to the jury. Thus, the trial court did not abuse its discretion in the weighing process.

■ The third argument does not involve evidence of DNA profiling, but, instead, involves testimony about extrapolating the probabilities of matching profiles. Appellant's argument is that the State's witness was not qualified as an expert in the field of population genetics and therefore could not testify concerning the probabilities. The trial judge was never apprised of such an

objection, and thus, the argument was not preserved for appeal. The facts surrounding the issue are that, in qualifying Presley as an expert, the State asked a number of questions going to his competency to testify about DNA profiling. Neither population genetics nor probabilities of matching profiles was ever mentioned by the State's attorney. The trial court allowed the appellant's attorney to voir dire the witness about his qualifications. Again, DNA profiling was the subject of the questioning and neither population genetics nor extrapolations was ever mentioned. After questions and answers, which cover six and one-half pages of transcript, the appellant objected because the witness "should have, at the very minimum, completed a Ph.D. program[.]" The trial court held the witness was competent to testify as an expert. The trial court's ruling obviously went to competency to testify about the only subject mentioned, DNA profiling. The witness then testified at length about DNA profiling and a good bit later, thirty-two (32) pages of transcript later, testified, without objection, about the mathematical probabilities of matching profiles.

The appellant next argues that the trial court erred in allowing the State's expert in forensic serology to testify about the reliability of DNA testing. On appeal, he contends the State's expert was not qualified as a DNA expert. Again, the issue argued on appeal was not preserved. The transcript reflects the following:

Q. And then you sent it on to the D.N.A. Section?

A. Yes, sir.

Q. You work in the laboratory and all. Do you accept the D.N.A. as a valid procedure based upon your —

MR. WATKINS [Defense Attorney]: Objection, your Honor.

THE COURT: Overruled.

MR. FIELDS [Prosecuting Attorney] CONTINUES:

Q. — Based upon your scientific knowledge and your training, do you have any concerns about the D.N.A. procedures and their sample bases?

A. No, sir, I do not.

Q. Are you familiar with the sample base that they use?

A. No, I'm not.

Q. Okay. Would it surprise you to know that they only use —

MR. WATKINS: Your Honor, he has already answered he doesn't know. I object to the question.

THE COURT: Overruled.

BY MR. FIELDS:

Q. Would it surprise you to know that there was only two or three hundred people in this statistical base?

A. No, sir, it wouldn't.

■ The first objection was a general objection and did not put at issue the qualifications of the witness. We have written that a specific objection to the introduction of testimony because of failure to lay the proper foundation must be made before we will hold that the admission of evidence was in error. *Home Ins. Co. v. Allied Telephone Co.*, 246 Ark. 1095, 442 S.W.2d 211 (1969). The reasoning for the holding is that if the rule were otherwise, the trial court would not be apprised of the deficiency, and the adverse party would not be given the opportunity to correct it. The second circuit similarly has held that a general objection that was overruled cannot avail upon appeal unless there was no reason whatsoever to admit the evidence, because the judge did not know what was in counsel's mind. *U.S. v. Klein*, 488 F.2d 481 (2d Cir. 1973). The second objection to the questions, while specific, was not on the basis now argued on appeal.

Appellant next argues that the trial court erred in denying his request for a continuance in order to locate an expert in the field of DNA testing. The information was filed in this case on October 30, 1989. The State gave notice that it intended to use evidence of DNA profiling. On February 8, March 6, and April 20, 1990, the appellant sought and was granted continuances because the results of DNA testing had not yet come back. On August 9, 1990, the State furnished appellant's counsel the test

results. On August 17, 1990, the appellant sought and was granted another continuance. On September 4, 1990, the appellant again moved for a continuance, but the trial court denied it. The appellant assigns that ruling as error.

■ We have often written that the decision to grant or deny a continuance is addressed to the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of that discretion, *see, e.g., Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990), but we have also written:

> DNA tests should not be ruled admissible before the accused's expert has had a chance to examine the evidence, procedures, and protocol. . . . [A]ccess to data, methodology, and actual results are crucial. An accused must be given the opportunity for independent expert review before a determination of reliability is made.

*Prater* v. *State*, 307 Ark. 180, 200, 820 S.W.2d 429 (1991). Thus, the denial of a continuance which would deprive an accused of the chance to have an independent review of DNA analysis will be closely examined.

■ In this case, in moving for the last continuance, the appellant's attorney stated that he had not yet located an expert witness. Counsel stated that he had found only one person in Arkansas who understands what "the F.B.I. is doing in terms of DNA," but that he could not use the witness. When the trial court asked why he could not use that witness the appellant's counsel responded: "Judge, I was afraid of that question, and I want to respectfully decline to answer it at this time. I do want to point out though, your Honor, she did point out several problems to me in the test." The trial court again inquired if counsel would answer the question, and he stated that he did not wish to answer. The appellant had months to locate an expert witness and make some sort of tentative arrangement for an independent review. Yet, he could not offer the name of a potential expert witness, nor could he offer any hope of procuring the attendance of such a witness in the near future. In short, appellant sought an open-ended continuance for an unnamed witness. Accordingly, the trial court did not abuse its discretion in denying the continuance.

■ Appellant's final argument involves the quashing of a

subpoena served on the Prosecuting Attorney. As set out in the initial recitation of facts, immediately after the prosecutrix was attacked, she phoned the prosecuting attorney, Ron Fields, and asked for help. He responded and drove her to a hospital for an examination. Fields did not anticipate testifying since his knowledge of facts was insignificant and any testimony that he might give would be cumulative to the observations of the examining physician. In short, his testimony was unnecessary. The appellant's attorney had long known that Fields took the prosecutrix to the hospital, but had never mentioned that he might want to call Fields as a witness. Fields anticipated being the State's lead attorney and, in fact, served as the State's main attorney. At 9:15 or 9:20 of the morning of the first day of trial, the appellant caused a summons to be served on Fields. Fields moved to have the summons quashed. The trial court ordered it quashed, and the appellant assigns the ruling as error. The ruling of the trial court was eminently correct. The law applicable to this set of facts is controlled by the almost identical case of *Williams* v. *State*, 300 Ark. 84, 87-88, 776 S.W.2d 359, 361 (1989), where we wrote:

> The court has held that when a prosecutor undertakes an active role in the investigation of a crime to the extent that he becomes potentially a material witness for either the State or the defense, he can no longer serve as an advocate for the State in that case. *Sherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988); *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987). However, we have also held that the rule against a prosecuting attorney acting both as an advocate and a witness was not designed to permit the defense counsel to call the prosecuting attorney as a witness and thereby disqualify him as the state's advocate.

In addition, the subpoena was untimely and was not granted with leave of court. *See* ARCP Rule 45(d).

Affirmed.