James HUNTER *v.* STATE of Arkansas

CR 93-617                                   875 S.W.2d 63

Supreme Court of Arkansas
Opinion delivered May 2, 1994

*William M. Howard, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, James Hunter, was tried by jury and convicted of kidnapping, theft, theft by receiving, two counts of rape, and two counts of burglary. He argues the in-court identification of him by two victims should have been suppressed because the witnesses had identified him prior to the trial in a "show up" situation which was impermissibly suggestive. While we find no merit in that argument, we must reverse and remand for a new trial in response to his other contention that the Trial Court's refusal to grant a continuance due to the prosecutor's failure to comply with a discovery request resulted in unfair prejudice.

There was evidence from which the jury could have concluded these facts. Sheila Cook was assaulted in her home and raped by a man she could not identify, other than to say he was a black person, because he had an afghan taken from her couch wrapped around his head. The assailant twice forced her to engage in sexual intercourse and then left with a small amount of her money and her husband's Remington 30-06 rifle. Mrs. Cook called her husband and the police immediately after the incident. Samples of semen and hair were removed from her and preserved for blood grouping and DNA testing.

Less than two weeks later a man entered the home of Larry Knight. He was first seen by Mr. Knight's daughter, Missy, who after becoming aware of and observing the intruder for a second or two, screamed and ran. As she fled down a hallway, the intruder followed and collided with Mr. Knight who was running from the opposite end of the house in response to his daughter's scream. Mr. Knight had an opportunity to observe the intruder after the collision for one or two seconds at a distance of approximately six feet. The intruder ran, and Mr. Knight called the police. They described the intruder to the police as a black male who was wearing a yellow or mustard colored shirt and dark pants.

On the same day Mr. Hunter had a traffic accident. The investigating officer did not have his ticket book with him and asked Mr. Hunter to go to the police station so that he could issue him a citation for driving without a license. Mr. Hunter failed to arrive at the station, and an officer was sent to find him and bring him to the station. While Mr. Hunter was at the station receiving his citation the Knights arrived to confer with the police about

the offense committed against them. They saw Mr. Hunter, and told an officer he was the man who had been in their home earlier. Mr. Hunter was arrested and charged with burglary.

A search warrant was issued, and several stolen firearms were found at Mr. Hunter's residence, including Mr. Cook's Remington 30-06 which had Mr. Hunter's fingerprints on it. The State gathered blood and hair samples from Mr. Hunter, and these were compared with the samples gathered from Mrs. Cook. The information was then amended to include burglary, kidnapping, rape, theft by receiving, and theft. The trial was set for June 10, 1992.

Mr. Hunter filed a motion for discovery on March 16, 1992, in which he requested any reports or statements of experts concerning the case, including the results of any scientific tests. The prosecutor responded and informed Mr. Hunter he was welcome to any information in his file. On June 9, 1992, the State asked for and was granted a continuance so that the samples collected from Mrs. Cook and Mr. Hunter could be sent to the Federal Bureau of Investigation's DNA testing laboratory. The Trial Court reset the trial date for October 7, 1992.

On September 2, 1992, Mr. Hunter, in a lengthy motion for discovery, asked for all materials relating to the DNA testing including autoradiographs, lab notes, protocols, and other specific operating procedures.

On September 24, 1992, Mr. Hunter moved for a continuance on the ground that the notes and materials which were requested in his previous motion for discovery had not been furnished to him by the State. The Trial Court granted this motion on October 6, 1992, and reset the trial for November 5, 1992.

On November 2, 1992, Mr. Hunter requested another continuance as the State still had not provided the information he requested concerning the DNA test. The Trial Court asked Mr. Hunter's counsel to "waive" the issue. Counsel refused. The Trial Court then denied the motion and the trial proceeded.

During the trial both Mr. Knight and his daughter positively identified Mr. Hunter as the man who had been in their home. Each stated the identification was based on their recollection of Mr. Hunter's appearance at the time of the incident and not on the iden-

tification which occurred at the police station. Mr. Hunter objected and stated the identification was the result of a show-up and impermissibly suggestive. The Trial Court overruled the objection and allowed the in-court identification. The jury convicted Mr. Hunter on all counts and sentenced him to ninety-one years imprisonment.

We reverse because of the failure to provide the discovery requested and the refusal of the continuance. We address the matter of the identification testimony as it may arise on retrial.

## 1. Discovery violation

Arkansas R. Crim. P. 17.3 states in part that "[t]he prosecuting attorney shall use diligent, good faith efforts to obtain material in the possession of other governmental personnel which would be discoverable if in the possession or control of the prosecuting attorney." Reversible error exists when a prosecutor fails to comply with an appellant's timely request for discovery, resulting in prejudice to the appellant. *See Hall* v. *State*, 306 Ark. 329, 812 S.W.2d 688 (1991).

While Mr. Hunter's point of appeal is couched in terms of the Trial Court's failure to grant a continuance, the gravamen of the point is the fact that the State had not furnished the materials necessary to conduct effective cross-examination of the State's expert witness, an employee of the FBI, who was to present the DNA evidence linking Mr. Hunter to the rape of Mrs. Cook. The State's expert witness testified he was not made aware, until the day before the trial, of Mr. Hunter's previous requests for the information. It is apparent the prosecution had done nothing toward seeking the information to comply with the defense request.

The only argument presented to us by the State in response is that Mr. Hunter's counsel lacked diligence and suffered no prejudice due to the failure to supply the information sought, thus the Trial Court's refusal of a continuance was not an abuse of discretion.

In *Swanson* v. *State*, 308 Ark. 28, 823 S.W.2d 812 (1992), we affirmed a conviction resulting from a trial in which DNA test results were presented by the State. Swanson had been granted

four continuances, the first three of which were due to the fact that the DNA test results had not been received. In conjunction with his final continuance motion, Swanson's counsel stated he had been unable to locate but one expert in Arkansas capable of presenting the testimony required. The Trial Court asked why that one witness could not be presented, and counsel declined to answer. Counsel stated he had no other expert in prospect. The continuance was denied.

We affirmed Swanson's conviction because counsel had had months to locate a suitable expert, but in the process of doing so, we said:

> We have often written that the decision to grant or deny a continuance is addressed to the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of that discretion, *see, e.g., Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990), but we have also written:
>
>> DNA tests should not be ruled admissible before the accused's expert has had a chance to examine the evidence, procedures, and protocol. . . . [A]ccess to data, methodology, and actual results are crucial. An accused must be given the opportunity for independent expert review before a determination of reliability is made.
>
> *Prater* v. *State*, 307 Ark. 180, 200, 820 S.W.2d 429 (1991). Thus the denial of a continuance which would deprive an accused of the chance to have an independent review of DNA analysis will be closely examined.

In this case, Mr. Hunter's counsel did not announce that he had no expert available. To the contrary, he stated he had located an expert in Birmingham, Alabama, but could not possibly take advantage of her expertise without the information the State had failed to provide. The circumstances here are thus substantially different from those in the *Swanson* case, and we must reverse. Counsel was entitled to the materials sought, and absent a lack of diligence, the failure of the State to provide them was unfairly prejudicial to Mr. Hunter. The continuance should have been granted.

## 2. Witness identification

If there are suggestive elements in a pretrial identification procedure making it all but inevitable that one person will be identified as the criminal, the procedure is so undermined that it violates due process. *See Chism* v. *State*, 312 Ark. 559, 849 S.W.2d 959 (1993). A witness identification of a suspect at a police station, however, when the police have not orchestrated a pre-trial identification, does not invalidate a subsequent in-court identification. *Van Pelt* v. *State*, 306 Ark. 624, 816 S.W.2d 607 (1991).

Mr. Hunter contends the pre-trial identification was impermissible and the in-court identification was thus tainted and unreliable. He alleges the police conspired to have him present at the station when the victims arrived. From the record, however, it could easily be concluded that the witnesses were at the police station of their own accord and spontaneously identified Mr. Hunter who was at the police station on a completely unrelated matter.

It is for the Trial Court to determine if there are sufficient aspects of reliability to admit evidence of the identification, and it is for the jury to determine the weight given to it. A trial court's ruling will not be reversed unless it is clearly erroneous, considering the totality of the circumstances. *Chism* v. *State, supra.*

The facts which support the reliability of the in-court identification are: (1) both witnesses had an unrestricted close-up view of Mr. Hunter for a second or two; (2) although the initial description only concerned the intruder's clothes, Mr. Knight also added a description of the intruder's hair cut, and facial features; (3) there was no other identification of a suspect; (4) both witnesses stated at the police station and at trial that they recognized him as the man they saw in their home; (5) there was not an early failure to identify Mr. Hunter; and (6) the pre-trial identification occurred on the same day as the burglary. No error occurred on this point.

Reversed and remanded.