Charles McNEESE *v.* STATE of Arkansas

CR 96-924                                    935 S.W.2d 246

Supreme Court of Arkansas
Opinion delivered December 9, 1996
[Petition for rehearing denied January 13, 1997.]

*Young & Finley,* by: *Dale W. Finley,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Charles McNeese appeals from his conviction of two counts of arson. Ark. Code Ann. § 5-38-301 (Repl. 1993). He was sentenced to imprisonment for sixty years and forty years, to be served consecutively, and fined $17,000. The sole point of appeal is Mr. McNeese's allegation that the Trial Court erred in overruling his motion for a continuance. The continuance was sought on the ground that defense counsel was not informed by the prosecution of certain inculpatory evidence until shortly before the scheduled commencement of the trial. There is an issue about whether the prosecution was required to inform Mr. McNeese of the evidence despite his counsel's failure to request it. We affirm the conviction because the Trial Court's action, whether or not such a request was required in the circumstances presented, resulted in no

unfair prejudice to Mr. McNeese.

On the night of October 14, 1994, Troy Terry's barn burned to the ground. Later that same night, or in the early morning hours of October 15, 1994, the Strawberry First Assembly of God Church was destroyed by fire. As the result of a police investigation, Mr. McNeese was charged with the offenses.

The State filed a bill of particulars stating the names of ten witnesses and listing three inculpatory statements allegedly made by Mr. McNeese. Despite the fact that no request for information pursuant to Ark. R. Crim. P. 17.1 had been made by the defense, the State's bill of particulars referred to the rule and stated that the information would be updated as required. Rule 17.1 requires the State to furnish certain information to an accused "upon timely request."

On October 25, 1995, the State added two names to its list of potential witnesses, Teresa Case, who is Mr. McNeese's ex-wife, and Mike Rains. The State also revealed the substance of five statements Mr. McNeese allegedly made to three of the State's witnesses.

According to the updated document, Mr. McNeese told J.D. Case, "If Troy Terry don't apologize to my daughter for them things he said I'll burn his barn or his chicken houses down." He told Teresa Case (Teresa McNeese at that time) the same thing and added, "I'll burn that church down if they don't quit gossiping about me and Maureen Dower." Finally, he allegedly told Johnny Blackwood, "I'm gonna use a book of matches and a filter cigarette. Light the cigarette and put the book of matches in there and just let it go," and "I've got a grudge against that pastor. I don't like him. It ain't none of his business what me and Maureen do."

The original information, filed on September 21, 1995, was amended on February 21, 1996, to upgrade the charges from class B B felonies to class A felonies. The amended information also charged Mr. McNeese as an habitual offender having been convicted of four prior felonies.

On February 22, 1996, the prosecuting attorney informed Mr. McNeese's counsel by letter that Teresa Case would also testify that Mr. McNeese, in the presence of another, spoke of burning the hay barn, and that he said the church people would have to find some-

where else to gossip. Counsel was also informed of a statement by Ricky Young about inculpatory remarks made by Mr. McNeese in Mr. Young's presence.

On that same day, Mr. McNeese moved to continue the trial, set for February 23, 1996, on the grounds that the State amended the information to allege a class A felony, that the State had not previously informed him of Mr. Young's statement despite the fact that it had been available since January 1995, and that Teresa Case would testify that the statements to her were made in the presence of "at least one other person," thus revealing that her testimony might not be subject to the marital privilege.

No argument is made on appeal about the upgrading of the charges from class B to class A arson. Presumably that was no more than a function of ascertaining the amount of damage done. *See* § 5-38-301(b).

A hearing on the motion was held on the morning of the trial. Counsel for Mr. McNeese conceded he had not made a request for discovery but contended it was his understanding that the prosecutor was following an open-file policy. His argument to the Trial Court and in this appeal includes his contention that he was lulled into thinking he need not make a request for information as he had already been promised it in the bill of particulars and by the prosecutor personally.

The record of the discussion among counsel and the Trial Court at the hearing reveals that Mr. McNeese's counsel was not at all concerned about Johnny Blackwood's statement, as he knew what his testimony would be. His concern about the prospect of Teresa Case as a witness was that he had previously represented her in divorce litigation and would have investigated whether he would have a conflict of interest in the event she became a witness against her former husband. If Rule 17.1 were clearly applicable, there is no contention that any of its provisions would have required the State to furnish Mr. McNeese with information that statements allegedly made by Mr. McNeese to his then wife were or were not made in the presence of another person.

The main point was and is the contention that the prosecutor was charged with knowledge of Mr. Young's statement, which had been taken by the State Police in January 1995, though it did not come to the prosecutor's attention until just before the trial. *See*

*Browning* v. *State,* 274 Ark. 13, 621 S.W.2d 688 (1981).

Ricky Young testified that Mr. McNeese was mad at Mr. Terry and that Mr. McNeese said he was "gonna mess with his [Terry's] tractors." Further, after the barn burned, Mr. McNeese approached Mr. Young and stated, "The barn burnt, didn't it."

Johnny Blackwood testified he went to Mr. Terry's barn with Mr. McNeese and Mr. McNeese burned it down. He also told the jury he went with McNeese to the church, and that Mr. McNeese burned it down.

J.D. Case testified that he heard Mr. McNeese threaten to burn Mr. Terry's barn.

Teresa Case testified that she heard Mr. McNeese tell Johnny Blackwood, on the evening the barn and church burned, to put on a darker shirt because "they were going trick or treating early." She told the jury that Mr. McNeese said he was going to burn down Mr. Terry's barn, that he admitted to burning the barn, and that he said he burned the church because "they were gossiping and they would have to find some place else to gossip this weekend." The alleged statements were made while she and Mr. McNeese were husband and wife.

██ As noted at the outset, the point of appeal here has to do with failure to grant a continuance. At the heart of the argument, however, is the alleged discovery violation with respect to Mr. Young's statement. Even if a discovery violation occurred, Mr. McNeese would not necessarily be entitled to a new trial. A prosecutorial discovery violation does not automatically result in reversal. *Clements* v. *State,* 303 Ark. 319, 796 S.W.2d 839 (1990); *Morris* v. *State,* 302 Ark. 532, 792 S.W.2d 288 (1990). Reversible error occurs only when a prosecutor's failure to comply with a timely request for discovery results in prejudice to the appellant. *Hunter* v. *State,* 316 Ark. 746, 875 S.W.2d 63 (1994); *See Hall* v. *State,* 306 Ark. 329, 812 S.W.2d 688 (1991). No unfair prejudice resulted from failure to grant a continuance thus allowing time for Mr. McNeese's counsel to attempt to find a way to combat Ricky Young's testimony. That testimony was at most cumulative and pallid in comparison with the testimony of Johnny Blackwood and the other witnesses.

Affirmed.