Vaughan Benjamin HOOKS and Sandra Clark Goodier *v.* Ronya Annette PRATTE

CA 95-391                                   920 S.W.2d 24

Court of Appeals of Arkansas
Division I
Opinion delivered April 24, 1996

162

*Joanna P. Boyles*, for appellants.

*F. Lewis Steenken*, for appellee.

JOHN F. STROUD, JR., Judge. This appeal results from an order of the Madison County Probate Court that terminated the guardianship of Jacob Aaron Hooks, a minor, and returned him to the custody of his mother, appellee, Ronya Annette Pratte. The appellants are Vaughan Benjamin Hooks, who claims that he is the natural father of Jacob, and Hooks's mother, Sandra Clark Goodier, who served as Jacob's guardian prior to the termination.

Appellant Hooks and appellee are Texas residents. They have never been married to each other but have lived together sporadically including the time period that Jacob was eight weeks old until he was ten months of age. In July 1992, appellee left Jacob in the

care of Hooks's mother, appellant Goodier, so that appellee could obtain treatment for her cocaine addiction. The following October, appellant Goodier, with the consent of appellee and Hooks, was appointed guardian of the person and estate of Jacob. Several months thereafter, appellee was seriously injured in a car accident and was hospitalized for two months.

Appellee first sought termination of the guardianship in January 1993 but later amended her petition to request a continuance of the guardianship and visitation in her. In February 1994, appellee filed an amended petition to terminate the guardianship, stating that her consent to the guardianship had been predicated on her need to seek rehabilitation from chemical dependency; that she understood that the guardianship would be voluntarily terminated following her rehabilitation; that she has resolved her substance abuse problem; that she is now married and part of a stable home and family; and that the interests of Jacob would best be served by terminating the guardianship and returning him to her. Appellee also stated in her petition that the paternity of Jacob had never been determined by a court of competent jurisdiction. Appellants Goodier and Hooks filed separate responses that denied the guardianship should be terminated. They both also alleged that Hooks is the natural father of Jacob and that the Texas birth certificate confirms this.

After a hearing on the merits of appellee's petition, the probate court entered an interim order which held that paternity had not been adjudicated in Hooks and therefore he could not be included as a party. The court also held, however, that, if his paternity had been established in Texas, he could provide that information to the court. The court also ordered that a home study and drug-screening test be performed on appellee. The probate court terminated the guardianship of Jacob after the receipt of the home study and drug-screening test, finding that the circumstances that had led to the letters of guardianship being issued had changed to the extent that it would be in Jacob's best interest to terminate the guardianship and to reunite Jacob with his mother, the appellee.

On appeal, appellants make several arguments in support of their contention that the probate court erred in dismissing appellant Hooks as a party to the termination proceeding. They claim that the probate court's holding that an adjudication of paternity was necessary in order for Hooks to participate in the proceeding is clearly erroneous because Ark. Code Ann. § 28-65-207(b) (Supp.

1993) makes no distinction between a parent of a legitimate child and a parent of an illegitimate child. This section provides in part that "notice of the hearing of the application for the appointment of the guardian shall be served upon … [t]he parents of the alleged … minor …." Appellants argue that the court's order that appointed appellant Goodier as guardian recognized Hooks as the natural father of Jacob and, therefore, the doctrine of *res judicata* prevented the probate court from questioning Hooks's status as a parent at the termination proceeding.

■ The only argument appellants raised at the termination hearing in support of their contention that an adjudication of paternity was unnecessary was their contention that Hooks was listed as the father on Jacob's Texas birth certificate. Because no argument was made concerning the court's earlier order or the doctrine of *res judicata* at the hearing, we find this argument is being raised for the first time on appeal. It has long been held that the appellate court will not consider arguments raised for the first time on appeal. *See Kulbeth v. Purdom*, 305 Ark. 19, 21, 805 S.W.2d 622, 623 (1991).

■ Appellants admitted that there had never been any adjudication of paternity but argued that it was not necessary because, under Texas law, Hooks is considered the father if his name appears on Jacob's Texas birth certificate. The court stated that it would allow Hooks to remain a party to the termination proceeding if he could provide the court with any law to the effect that he would be an appropriate party. The court also stated that, if under Texas law Hooks's name on the birth certificate was sufficient to establish paternity, Hooks needed to file the birth certificate and the statute with the court. Although Hooks later filed a copy of Texas Code Ann. § 12.02(a)(4) (West 1989), with the court, which did indicate a man is presumed to be the biological father of a child if he consents in writing to be named as the child's father on the child's birth certificate, there is no record that he filed a copy of Jacob's birth certificate with the court. We therefore cannot say that the probate court erred in dismissing Hooks as a party.

■ Appellants also contend that the probate court erred in not making a determination of paternity. We do not address the merits of this contention, however, because appellants' abstract does not show that the probate court was asked to make such a determination. It is fundamental that the record on appeal is confined to that which is abstracted, and the failure to abstract information

pertinent to an issue precludes this court from considering the issue on appeal. *Harvill* v. *Bevans*, 52 Ark. App. 57, 60, 914 S.W.2d 784 (1996).

■ In connection with their first point, appellants also contend that the probate court violated Hooks's rights to equal protection and due process as established by the United States Constitution when it dismissed him from the termination proceeding. Here again, we find that these arguments were not raised before the probate court. Even constitutional arguments being raised for the first time on appeal will not be considered. *Moore* v. *State*, 323 Ark. 529, 543, 915 S.W.2d 284 (1996).

For their second point, appellants contend that the probate court applied the wrong standard of proof in considering only whether the guardianship was still necessary. They assert that this court's holding in *In re Guardianship of Markham*, 32 Ark. App. 46, 795 S.W.2d 931 (1990), requires that a petitioner must prove that the termination of a guardianship is in the child's best interest before the guardianship of a minor can be terminated.

■ In *In re Guardianship of Markham, supra*, the appellants had voluntarily consented to an order appointing the appellee as the guardian for their daughter and had asked the appellee to raise the child. The appellants later sought termination; however, the probate court found that it was not in the child's best interest to terminate the guardianship. The appellants argued that it was error not to terminate the guardianship because Ark. Code Ann. § 28-65-204 (1987) established a preference for a natural parent in the appointment of the guardian. On appeal, this court explained that Ark. Code Ann. § 28-65-401(b)(3) (Supp. 1989) governs a proceeding to terminate a guardianship, that it allows the court to consider the best interest of the ward in deciding whether to terminate a guardianship, and that the rights of the natural parents are not proprietary. Our holding, however, should not be interpreted as providing the only guideline a probate court can consider in terminating a guardianship. Arkansas Code Annotated § 28-65-401(b)(3) (Supp. 1993) provides that a guardianship may be terminated if, for any reason, the guardianship is no longer necessary *or* for the best interest of the ward.

In the case at bar, the probate court found that appellee had presented sufficient evidence to show that the guardianship was no

longer necessary and that it would be in Jacob's best interests to terminate the guardianship and to reunite him with his mother. Appellee testified that, when she entered the drug treatment program, she asked appellant Goodier to help take care of her son until she could get on her feet and could provide a stable home for him. Her testimony reflected that she has remained drug-free since she left that program, which had been approximately twenty months at the time of the hearing. She also testified that she has been happily married since October 1993 and helps her husband with work in renovating apartments and cares for his two sons that live with them. She also testified that they have prepared a room for Jacob next to hers, that Jacob has been to their house, and that his guardian, Ms. Goodier, has not indicated that she has any concerns about Jacob's staying with them. She further testified that she and Ms. Goodier have "gotten along" most of the time during the course of the guardianship and that she has no problem with Ms. Goodier visiting Jacob. She further stated that she has been voluntarily paying Ms. Goodier support since September 1993. Although Ms. Goodier disagreed that she should be terminated as Jacob's guardian, she admitted that appellee has been sending her money regularly since last September except for two months and that appellee is not the same person as she was when she left Jacob with her.

The court held that it found appellee to be honest and forthright with the court and that she had convinced the court that she has corrected the problems that she was having at the time the guardianship was established and is ready to assume the motherhood that she should have assumed earlier and to rear Jacob as her own child. Additionally, the drug screening and home study of appellee ordered by the court indicated that there was no evidence that appellee had taken any drugs and that appellee appeared to have a stable marriage, a mutually caring relationship with her stepchildren, and that Jacob appeared happy and quite comfortable in his mother's care. From our review, we cannot say that the decision of the probate court to terminate the guardianship is clearly erroneous. Although probate proceedings are reviewed *de novo* on the record, the decision of the probate judge will not be disturbed unless it is clearly erroneous, and in making that determination, we give due regard to the opportunity and superior position of the trial judge to judge the credibility of the witnesses. *In re Adoption of D.J.M.*, 39 Ark. App. 116, 121, 839 S.W.2d 535, 538 (1992).

■ Appellants, for their final point, contend that the probate court erred in applying Ark. Code Ann. § 9-10-113(b) (Repl. 1993) to the termination proceeding. This statute provides that a biological father, provided he has established paternity in a court of competent jurisdiction, may petition the chancery court, or other court of competent jurisdiction, wherein the child resides, for custody of the child. Appellants contend that the trial court erroneously relied on this "chancery" statute for requiring an adjudication of paternity in order to allow Hooks to participate in the termination proceeding. We are unable to address this point, however, because appellants' abstract of the proceeding does not indicate that the probate court considered this statute in dismissing Hooks from the proceeding and appellants are raising this issue for the first time on appeal. As we have previously held, the record on appeal is confined to what is abstracted, *see Harvill v. Bevans*, 52 Ark. App. at 60, 914 S.W.2d at 787, and we will not consider arguments raised for the first time on appeal. *Kulbeth v. Purdom*, 305 Ark. at 21, 805 S.W.2d at 623.

Affirmed.

COOPER and ROBBINS, JJ., agree.