David Eric WOOD *v.* STATE of Arkansas

CA CR 00-1273                                          53 S.W.3d 56

Court of Appeals of Arkansas
Division III
Opinion delivered September 5, 2001

*Lynn Frank Plemmons*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. David Eric Wood was convicted by a jury of raping his two stepsons and sentenced to forty years' imprisonment in the Arkansas Department of Correction. Wood now challenges the rulings of the trial court to 1) grant the State's motion to exclude the testimony of his expert witness, and 2) deny his motion for a continuance to secure another expert witness. The trial court did not abuse its discretion in excluding Dr. Tracy's testimony or in denying appellant's motion for continuance. Therefore, we affirm.

### Factual and Procedural History

On March 8, 2000, the State filed a felony information alleging that appellant committed two counts of rape of a person less than fourteen years of age. The matter was set for trial on May 22, 2000. Appellant subsequently raised the defense of mental disease or defect, and on May 19, 2000, the court granted a continuance until June 20, 2000. Another continuance was granted following a defense motion on June 19, 2000, which reset the trial to July 12, 2000.

Appellant underwent a court-ordered psychiatric evaluation at the Ozark Guidance Center. In a letter to the court dated May 26, 2000, Dr. Travis Jenkins, the chief medical officer of the Ozark Guidance Center, wrote that appellant had the capacity to understand the proceedings against him and to effectively assist in his own defense. Dr. Jenkins also opined that appellant had the capacity to appreciate the criminality of his conduct and could have conformed his conduct to the requirements of the law.

In response to a discovery request filed by the State on June 29, 2000, appellant formally informed the State on the last day before trial — July 11, 2000 — that he intended to introduce Dr. Ann B. Tracy as an expert witness to testify about the effect of the prescription drug Paxil as part of his defense. Later that day, the State filed a motion to exclude the testimony of Tracy, arguing that Tracy had not conducted laboratory research on neurotransmitters, or conducted laboratory research on the effects of any drug on human beings.

The State also filed a motion to exclude evidence and testimony that appellant planned to offer to show that his use or disuse of Paxil was an affirmative or general defense to the crimes with which he was charged. The State argued that the evidence was

based on a novel scientific theory that had not been accepted by the relevant scientific community or subjected to serious scientific analysis. The State also contended that the evidence was not sufficiently tied to the facts and would only confuse and mislead the jury.

The next day, July 12, 2000, a hearing was held on the State's motion to exclude. The State conducted a voir dire examination of Dr. Tracy, who testified that she received a bachelor's degree in psychology and biblical studies from Coral Ridge Baptist University in Utah. She also holds a Ph.D. degree in health sciences, with emphasis on psychology, from George Wythe College. Dr. Tracy testified that she wrote a book entitled *Prozac: Panacea or Pandora? The Rest of the Story*, and that half of her research was based on drug experience reports, and the other half reviewed medical literature. She testified that she did not conduct the clinical studies herself, and that she had done no laboratory research. Dr. Tracy opined that Paxil, Zoloft, Prozac, and other SSRI antidepressants were terribly dangerous and should be discontinued.

At the conclusion of the hearing, the trial court granted the State's motion to exclude Dr. Tracy's testimony. The court ruled that her intended testimony was not reliable and that the methodology she used was suspect.

Appellant also argued that Rule 702 allowed someone with specialized knowledge to testify as an expert, and that Dr. Tracy had specialized knowledge that would be helpful to the finder of fact. Counsel for appellant noted the court's displeasure with late filings by both parties, and observed that the State was aware of appellant's defense strategy and of his plans to use Dr. Tracy for over a month prior to trial. Appellant's counsel told the court that the State filed its motion to exclude the previous day, and that if an expert was not allowed to testify, appellant would have no defense to present and would be prejudiced in his right to a fair trial. Counsel for appellant asked the court to grant a continuance to allow the defense to find an expert with different qualifications that the court would find acceptable.

The State agreed that the parties discussed appellant's defense and plans to use Dr. Tracy. However, the State noted that appellant never replied to the State's several requests for Dr. Tracy's resumé until July 11, 2000. Counsel for appellant asserted that he informally provided information about Dr. Tracy to the State prior to the State filing its motion for discovery, including Dr. Tracy's name, phone number, the title of the book she had written, and the name

of her publisher. After noting that the case had been continued on two separate occasions at the request of the defense, the court denied appellant's motion for a continuance and a jury trial commenced.

Appellant testified in his defense that he was taking Paxil when he raped his stepchildren in 1999. He initially began taking the drug without a prescription in September 1997, after he moved to Springdale, and continued using it until November 1997. Appellant began taking Paxil again in September 1998. In March 1999, appellant saw a physician who prescribed Paxil. Appellant had the prescription filled, refilled the prescription on six occasions, but discontinued using Paxil after his arrest. Appellant testified that while taking Paxil, his alcohol consumption changed dramatically, that he had difficulty sleeping, became more aggressive with people, quickly lost his temper, and seemed more sensitive to light. Appellant testified that he never molested children before taking Paxil.

In rebuttal, the State presented testimony from Dr. Jenkins, who testified that he conducted a psychiatric interview on appellant. Dr. Jenkins testified that appellant told him that he was taking Paxil when he raped his stepsons. However, Dr. Jenkins opined that, in general, the side effects of Paxil in men and women included *decreased* sexual interest and *decreased* sexual ability. Dr. Jenkins also testified that some men who took Paxil became impotent, and that he knew of no studies saying that taking Paxil or discontinuing the use of Paxil would cause a person to engage in deviant sexual activity. On cross-examination, Dr. Jenkins acknowledged that the insert included in the packaging of Paxil listed *increased* interest in sexual activities as a possible side effect of Paxil.

Following deliberations, the jury returned with a verdict of guilty of two counts of rape and sentenced appellant to forty years' imprisonment for each count. Appellant now argues that the trial court erred in prohibiting Dr. Tracy's testimony and erred in refusing to grant his motion for continuance.

*Admissibility of Expert Witness Testimony*

Generally, whether expert testimony is admissible depends on whether the testimony will aid the fact finder in comprehending the evidence presented or resolving a fact in dispute. *See Smith v. State*, 330 Ark. 50, 953 S.W.2d 870 (1997). The weakness or strength of an expert's testimony goes toward the weight and

credibility to give the testimony and not toward the admissibility of the testimony. *See Killian v. Hill*, 32 Ark. App. 25, 795 S.W.2d 369 (1990).

█ In *Farm Bureau Mut. Ins. Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000), our supreme court adopted the holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which set out the following guidelines for trial courts to use when considering expert scientific testimony:

> [T]he trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 592-93 (footnotes omitted).

█ The *Foote* court noted that a primary factor for a trial court to consider in determining the admissibility of scientific evidence is whether the scientific theory can be or has been tested. *See Foote, supra.* Other factors include whether the theory has been subjected to peer review and publication, the potential error rate, and the existence and maintenance of standards controlling the technique's operation. It is also significant whether the scientific community has generally accepted the theory. *See Foote, supra.*

In her proffered testimony, Dr. Tracy testified that her intended testimony was widely accepted within the scientific community and was included in medical literature. She testified that her opinion that the side effects of Paxil caused deviant sexual behavior was documented in medical research and throughout medical studies. As proof, Dr. Tracy referred to the insert provided by the manufacturer of Paxil that listed increased libido as a significant side effect of using the drug. Dr. Tracy testified that the insert discussed the possible effect of serotonin re-uptake inhibitors causing problems with sexual performance and also the paradoxical effect of an increased compulsion for sex.

When asked what particular field of science her book addressed, Dr. Tracy replied that it discussed pharmacology and the effects of SSRI antidepressants, Prozac, Zoloft, Paxil, Luvox, and

serotonin and how it affects people. She told the court that half of her research was based on drug experience reports and the other half on reviewing medical literature. Dr. Tracy acknowledged that she did not personally conduct the clinical studies, but she reviewed the clinical studies. She testified that she did not use double-blind or single-blind placebo controls in the research of her book. Also, she did not conduct laboratory research. In response to whether she felt that antidepressant SSRI drugs were terribly dangerous, whether the pharmaceutical companies who produced the drugs had misled the public, and whether the drugs ought to be done away with, Dr. Tracy responded yes.

As part of the proffer, Dr. Tracy also testified that one of the most dangerous things to do to the brain and to the body was to increase serotonin levels. She stated that her research revealed a correlation between increased serotonin levels and sexual misbehavior. Dr. Tracy testified that another side effect was amnesia. She also testified that she visited appellant and received his medical history. After listening to the testimony offered at trial, Dr. Tracy opined that appellant was acting out his worst nightmare while on Paxil. She was not surprised that appellant could not remember what happened. Dr. Tracy testified that appellant had many symptoms of someone with increased levels of serotonin, such as cravings for alcohol, sensitivity to light, irritability, aggression, memory loss, and insomnia. She testified that she had no doubt that appellant's conduct was affected by ingesting Paxil.

The record contains no testimony or evidence that Dr. Tracy cited to demonstrate that the use of Paxil would cause a person to engage in deviant sexual activity or that Paxil specifically caused appellant to rape his stepsons. Moreover, the record demonstrates that the trial judge considered the factors enumerated in *Foote* in making his decision to exclude Dr. Tracy's testimony. The court noted that Dr. Tracy's methodology in conducting studies and reaching her conclusions were suspect and did not follow any accepted scientific method. The court further stated that Dr. Tracy's proffered testimony displayed prejudice toward an entire series of drugs or classification of drugs, and that Dr. Tracy appeared to be on a crusade to eliminate the use of certain drugs, including Paxil. The court concluded that Dr. Tracy's testimony would not be reliable or relevant and that even if the evidence were relevant, the testimony would mislead and confuse the jury.

■■ Trial judges serve as evidentiary gatekeepers for ensuring the reliability of proposed expert testimony. In this case, appellant

failed to demonstrate 1) that the scientific community generally accepted Dr. Tracy's theory that Paxil would cause a person to engage in deviant sexual activity, 2) that the theory could be or had been tested, 3) that the theory had been subject to peer review and publication, 4) the potential error rate of the theory, and 5) the existence and maintenance of standards of control. We hold that the trial court did not abuse its discretion by excluding Dr. Tracy's testimony after finding that her methodology in conducting studies and reaching the conclusions on which her testimony was based were suspect and likely to mislead or confuse the jury.

### Denial of Motion for Continuance

▆▆▆ When considering a trial court's denial of a motion for continuance that is premised on a lack of time to prepare, we review the totality of the circumstances. *See Davis v. State*, 318 Ark. 212, 885 S.W.2d 292 (1994). The moving party bears the burden of proving prejudice, and we will not reverse absent a showing of abuse of discretion. *See id*. Prejudice is demonstrated by showing "what [an] attorney failed to do that could have been done, or what [an attorney] did that would not have [been] done, if . . . afforded more time." *See id*. at 216, 885 S.W.2d at 294. An absence of due diligence will suffice as grounds to deny a continuance. *See id*. Rule 27.3 of our Rules of Criminal Procedure mandates that a trial court grant a motion for continuance for as long as necessary after a party demonstrates good cause.

We hold that the trial court did not abuse its discretion in denying appellant's request for a continuance. The parties appear to agree that appellant did not provide Dr. Tracy's resum to the State until the day before trial. However, appellant argues that approximately one month before trial, the State knew that he planned to use Dr. Tracy's testimony and that his alleged drug reaction was the crux of his defense. He contends that without a·continuance, he was severely prejudiced because he could not present his only defense. The State conceded at the hearing that it was aware of the defense strategy and that the defense planned to use the testimony of Dr. Tracy. It argued that although it requested Dr. Tracy's resumé several times, the defense failed to submit it until the day before trial. The State acknowledged that it filed a late discovery request, but stated that its late filing was the result of appellant not responding to its informal requests for information on Dr. Tracy.

The record indicates that the State formally requested a disclosure of appellant's experts, along with the nature and source of their information and testimony, on June 29, 2000. Appellant did not provide this information until July 11, 2000, the day before the trial. This fact, combined with the trial court's observation that it had granted two previous continuances at the request of the defense, support the conclusion that the trial court did not abuse its discretion in denying appellant's motion for continuance.

Affirmed.

ROBBINS and CRABTREE, JJ., agree.