Michael LOWRY *v.* STATE of Arkansas

CA CR 03-1065                                                    205 S.W.3d 830

Court of Appeals of Arkansas
Opinion delivered March 23, 2005

---

334

*The Cannon Law Firm, P.L.C.*, by: *David R. Cannon*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellees.

ANDREE LAYTON ROAF, Justice. Appellant Michael Lowry was convicted in a jury trial of stalking in the first degree, arson, and eleven counts of violation of a protective order. Lowry was sentenced to twenty years' imprisonment on the stalking charge, ten years' imprisonment on the arson charge, and one year imprisonment

in the Saline County Jail for the violation of protective-order charges. The one-year jail sentence was merged with the other sentences, and the prison terms were run consecutively to each other. On appeal, Lowry argues that the trial court erred in (1) denying his motions for directed verdict on the stalking and arson charges; (2) admitting evidence of a July 6, 2002, letter in violation of Ark. R. Evid. 402; (3) allowing testimony regarding two incidents involving damage to the victim's personal property in violation of Ark. R. Evid. 402; (4) allowing the testimony of State's witness James Heath when he was not disclosed as a witness during discovery; and (5) denying his motion for a continuance.

The day before trial, Lowry's counsel moved for a continuance, asserting that the State had provided a substantial amount of the case file just two days prior to the trial; that the case would be unfairly prejudiced because she would have to redevelop her trial strategy; and that she needed more time to adequately review all of the information. The motion was denied; however, the trial court indicated that it would entertain a motion to disallow use of the evidence during the trial. During the trial, the following evidence was presented.

The victim, Sandra Lewellen, and Lowry dated for approximately three years. The couple was at one time engaged to be married, but the engagement was terminated when Lewellen accused Lowry of being involved with another woman, Rhonda Brassiere, whom he subsequently married. During their relationship, Lewellen and Lowry engaged in several verbal and physical altercations. On May 28, 2002, Lewellen went to Lowry's house to confront him about seeing Rhonda. When she arrived, Lowry began beating her. Lewellen received bruises to her face, shoulders, and arms, and had four cracked ribs. During the altercation, Lowry choked her, and stated, "Go unconscious bitch." He also told her that he would set fire to her and her family's house while they were in it. Lewellen testified that on another occasion Lowry had told her that he had previously set fire to his own house and that he had considered setting fire to his truck to collect the insurance proceeds.

On May 29, 2002, Lewellen obtained a temporary order of protection, which prohibited Lowry from contacting her and her daughter Kim. On the following day, Lowry attempted to contact Lewellen by speaking with one of her friends. On May 31, 2002, Lowry left two messages on Lewellen's answering machine, indicating that he needed to talk to her. Lewellen testified that, from

May 31 until June 22, she received a total of seventeen calls from Lowry's telephone number. Lewellen and another witness for the State also testified that they observed Lowry driving slowly past Lewellen's home.

In addition to the phone calls, Lewellen testified, over Lowry's objection, that on July 6, 2002, she had received an unsigned letter, which stated, "Thank's for cleaning up the lake lot, and by the way I do swallow." She said that Lowry had property on Lake Conway; that she had helped him clear the property; and that she and Lowry had spent time at the property. Also, after Lewellen purchased new patio furniture, during the night, the furniture had been shredded. She testified that she did not see the incident occur, but stated that she was sure it was Lowry. She also testified that on one night all of the bolts on her butane heater were unscrewed and that she had to call in a repairman to fix it. She said that the repairman indicated that the heater had been tampered with. She attributed this incident to Lowry and Rhonda. Lewellen's locks to the doors of her home were also superglued, and according to Lewellen, Lowry told her that Rhonda had superglued the locks. Rhonda also had a habit of driving past Lewellen's home on her way to Lowry's house and honking her horn. Lewellen testified that on, August 6, 2002, while she was getting ready for work, she heard the sound of a truck engine outside of her house. She said that, because she was in a hurry, she did not look outside to see who it was, but that, when she went to get into her truck, it had been damaged by being "keyed." She stated that Lowry's truck had a diesel engine; that she thought it was Lowry's truck that she heard; and that when she reached the end of her street, Lowry was sitting at the stop sign.

Lowry was arrested several times for violating the order of protection. On August 7, 2002, Lowry was arrested for following Lewellen in her vehicle and holding up a sign that read, "Sandy, I love you." In a search incident to his arrest, an officer discovered .22 magnum rounds, a .22 magnum pistol, and a .45 semi-automatic pistol.

On June 21, 2002, Lowry contacted Lewellen's daughter, Kim, at Kim's place of employment. Kim testified that she and her boyfriend, Dustin Tuberville, had just returned from having had a CD player installed in her car. They then drove to Kim's job, and Tuberville remained outside installing speakers in her car. During this encounter, Lowry gave Kim the engagement ring he had given Lewellen and apologized for the May 28, 2002 incident. Kim also

told Lowry in response to his questioning that her mother's male friend had fixed her car. Kim testified that Lowry said repeatedly that day, "I am sorry, but I am going to have to do this." After leaving Kim's job, Lowry spoke to Tuberville in the parking lot and was again apologetic. However, Tuberville testified that he overheard Lowry say, "They are going to burn for this shit," as he was leaving. Tuberville told Kim about the remark.

That night, at 1:00 a.m., Lewellen was awakened by a loud roar at her bedroom window. She described the noise as a loud "whooshing" sound. Lewellen discovered that her and her daughter's cars were on fire. They called 911 and immediately left the house. As she was leaving, Lewellen noticed that the flames were five to six feet high and that the paint on her house was beginning to bubble from the heat of the fire.

Officers Baugh and Preator responded to the call. En route to Lewellen's house, they observed a tan Chevrolet GMC pickup truck with a ladder rack on it parked down the hill from Lewellen's trailer park. Baugh shone his spotlight on the truck, and the officers saw a pair of feet standing behind the truck. The person was wearing brown and black hiking boots and jeans. The officers surmised that the person was "relieving" himself on the side of the road and continued on.

After the fire was extinguished, an investigation took place. Lewellen indicated that she believed that Lowry had started the fire. The fire department and police officers searched the area for accelerants, but none were found, and the two vehicles were removed. After taking Lewellen's report, the officers went to Lowry's home. There they observed his tan pickup truck with a ladder rack. In the bed of the truck, they saw a 55-gallon burn-barrel drum. Lowry was taken into custody for questioning, but he denied being involved in the fire incident. Officer Preator testified that she saw the brown and black boots in Lowry's house that they had seen earlier while en route to Lewellen's home, but they were not confiscated.

After Lowry was taken into custody, the officers returned to Lewellen's home. On this second trip, the officers smelled gasoline. All of the officers testified that they had not smelled any accelerants initially, but during the second trip there was a very strong odor of gasoline. It was determined that the fire began at the front of Kim's car and traveled toward the back of her car; however, the fire chief testified that he could not say how the fire

was started. The fire chief admitted that improperly installed electrical items may cause fires and conceded that he was unaware that Kim had had a CD player and speakers installed in her car on the day of the fire. He did say that a fire that is accelerated by gasoline makes a whooshing sound and is very volatile as opposed to an electrical fire, which makes a popping sound and burns more slowly. The fire chief also testified that he had previously responded to a fire involving Lowry's home.

James Heath, the tow truck driver, testified that when he removed the cars from the scene, he observed gasoline pouring from the front end of both vehicles. He said that he picked the two vehicles up from the rear to place them on the flatbed and that gasoline poured out from the engine compartments.

On June 28, 2002, another order of protection was issued, prohibiting Lowry from committing acts of domestic abuse against Lewellen, from harassing, communicating, or terrorizing her, and from visiting her residence or any place that her daughter Kim might be.

Following the State's case-in-chief, Lowry moved for a directed verdict on the stalking and arson charges, and for a mistrial based on the admission of James Heath's testimony because he had not been disclosed as a witness prior to trial. The motions were denied. The motions were renewed at the close of the evidence, and were again denied.

Before addressing Lowry's points on appeal, we first consider the motion for summary reversal filed by Lowry. In the motion, Lowry requested summary reversal due to the court reporter's failure to transcribe all of the trial proceedings. In response to our supreme court's Writ of Certiorari, the court reporter admitted that she kept no record of the bench conferences or in-chambers proceedings. She also failed to transcribe the trial court's reading of the jury instructions and failed to preserve for the record the jury instructions themselves. In his motion, Lowry's counsel asserts that, after retiring to deliberate, the jury requested information and that the trial court responded to the jury's request. He further asserts that these proceedings were not recorded. As a result of the above errors, there was a proceeding to reconstruct the record.

For summary reversal, Lowry's counsel first argues that it is impossible to determine whether there were errors during the instruction of the jurors because there is no record of the jury

instructions. For support Lowry states, "In cases involving a trial court's giving of an erroneous instruction involving the trial mechanism to be used in deciding either a civil or criminal case, we will not require the appellant to demonstrate prejudice." *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 434-35, 855 S.W.2d 913, 916 (1993). Such a requirement is often an impossible burden, and the requirement of an impossible burden, in effect, renders the requirement of correct instructions on the law meaningless. *Id.* For his second point for summary reversal, Lowry argues that he is entitled to summary reversal because there is not proof that the trial court complied with Ark. Code Ann. § 16-89-125 (1987) when the jury requested information after it had retired to deliberate because there is no record of the proceedings.

Arkansas Code Annotated section 16-89-125 establishes the procedure to be followed in criminal trials when the jury has retired for deliberation, but later requests additional information. The statute states in pertinent part:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties.

The corresponding statute applicable to civil trials, which contains language identical to the criminal statute, is found at Ark. Code Ann. § 16-64-115 (1987). Thus, the considerations in those cases are just as relevant in criminal cases and vice versa. *See Dickerson Construction Co., Inc. v. Dozier*, 266 Ark. 345, 584 S.W.2d 36 (1979). Strict compliance with the statute is mandatory. *Id.* Failure to comply with the statute is prejudicial as a matter of law unless it can be shown that no prejudice resulted. *Id.* (Citing *Williams v. State*, 264 Ark. 77, 568 S.W.2d 30 (1978)). In criminal cases the burden is on the State to show lack of prejudice by clear and convincing evidence with all doubts resolved in the favor of the defendant. *Williams v. State*, 264 Ark. 77, 568 S.W.2d 30 (1978).

■ There exists a preference for a complete record. *Bell v. State*, 296 Ark. 458, 757 S.W.2d 937 (1988). However, a full and complete record is not necessary. *Id.* Instead, this court must evaluate the record on appeal to determine whether it is sufficient for us to perform a review of the claimed errors. *Id.* A record may

be sufficient even though it contains uncorrectable omissions. *Id.* It is the appellant's duty to demonstrate prejudice from the state of the record. *Id.*

■ Regarding the jury instructions, during the reconstruction hearing, Lowry's trial counsel testified that the jury instructions were an agreed-upon set of instructions. The trial court also stated that it was presented with an agreed set of instructions. Thus, if there were any erroneous instructions given, Lowry's trial counsel consented to those instructions and the error. Lowry's trial counsel did not testify that she objected to any of the instructions, nor did the trial court testify that it entertained any objections to the jury instructions. In fact, the State's attorney testified that Lowry's trial counsel did not object to the jury instructions, and that she had reviewed them before hand. We do not reverse where the appellant has acquiesced to the error. *Narup v. Narup,* 75 Ark. App. 217, 57 S.W.3d 224 (2001). Further, this court does not reverse absent a proper objection made below. *Brown v. State,* 5 Ark. App. 181, 636 S.W.2d 286 (1982).

■ In the reconstruction proceeding, the trial court did not address the issue of its contact with the jury. Although the State has the burden of demonstrating that an appellant was not prejudiced by the trial court's contact with the jury during deliberations, *Houston v. State,* 41 Ark. App. 67, 848 S.W.2d 430 (1993), neither the State nor Lowry's counsel raised this issue during the reconstruction proceedings. Lowry's counsel asserts in his motion for summary reversal, "[I]n speaking with Appellant's trial counsel I learned that the jury returned to the courtroom after retiring to deliberate. The jury asked for information. There was an in-chambers proceeding, and the Court responded to the jury's request for information. The transcript is completely devoid of any indication that these events took place." We cannot consider this issue as it is raised for the first time in Lowry's motion for summary reversal. *Hooks v. Pratt,* 53 Ark. App. 161, 920 S.W.2d 24 (1996).

Turning now to Lowry's points on appeal, we first consider Lowry's challenges to the sufficiency of the evidence. This court is required to address challenges to the sufficiency of the evidence first due to double-jeopardy considerations. *Steggall v. State,* 340 Ark. 184, 8 S.W.3d 538 (2000). A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Walley v. State,* 353 Ark. 586, 112 S.W.3d 349 (2003). On appeal from a denial of a

motion for directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* Only the evidence supporting the guilty verdict need be considered, and the evidence is viewed in the light most favorable to the State. *Id.*

Lowry argues that the evidence was insufficient to support the first-degree stalking conviction. A person commits stalking in the first degree if he purposely engages in a course of conduct that harasses another person and makes a terroristic threat with the intent of placing that person in imminent fear of death or serious bodily injury or placing that person in imminent fear of the death or serious bodily injury of his or her immediate family and he:

> (A) Does so in contravention of an order of protection consistent with the Domestic Abuse Act of 1991, § 9-15-101 et seq., or a no contact order as set out in subdivision (a)(2)(A) of this section, protecting the same victim or victims, or any other order issued by any court protecting the same victim or victims; or

> • • •

> (C) Is armed with a deadly weapon or represents by word or conduct that he is so armed.

Ark. Code Ann. § 5-71-229 (Repl. 1997).

Lowry asserts that the State failed to prove that he made a terroristic threat while armed with a deadly weapon or in contravention of an order of protection as required by section 5-71-229. Arkansas Code Annotated section 5-13-301(a)(1)(A) (Repl. 1997) states, "A person commits the offense of terroristic threatening in the first degree if with the purpose of terrorizing another person, he threatens to cause death or serious physical injury or substantial property damage to another person." The conduct prohibited by this statute is the "communication of a threat with the purpose of terrorizing another." *Lewis v. State*, 73 Ark. App. 417, 421, 44 S.W.3d 759, 763 (2001). Under its plain terms, the stalking statute requires the perpetrator to make a threat with the intent of placing his victim in imminent fear of death or serious bodily injury. *See Wesson v. State*, 320 Ark. 380, 896 S.W.2d 874 (1995). In *Wesson*,

*supra*, the appellant made several phone calls to his ex-girlfriend, in which he repeatedly told her that he would "hurt her"; that he had thoughts of killing her; and that he wanted to destroy her. The supreme court found that those statements made to the victim supported a finding that Wesson intended to cause the victim serious physical injury.

In this case, the State relied on several incidents in support of the stalking charge. The first incident is the May 28 incident where Lowry beat Lewellen and stated that he would set fire to her and her family's house with them still in it. Although the order of protection was not issued until the following day, Lowry's attorney did not raise that argument to the trial court. Next, the State points to the statement made to Kim in June 21, 2002, at her place of employment. According to Kim, Lowry stated, "I am sorry, but I'm going to have to do this." This incident also involves the statement overheard by Dustin Tuberville on that date. Tuberville testified that during his conversation with Lowry, Lowry was first apologetic; however, as he was leaving he stated, "They are going to burn for this shit."

■ The State also argues that the day following the alleged arson, Lowry chased Kim and Tuberville at speeds almost double the speed limit after Tuberville "flipped him off." The State cites *Davis v. State*, 12 Ark. App. 79, 670 S.W.2d 472 (1984), where the appellant chased the victim at a high rate of speed and attempted to run them off the road. We conclude that there was sufficient evidence of terroristic threats to "burn" the victim to support the stalking conviction, along with numerous incidents of harassment, vandalism, and other hostile acts directed toward the victim and her family. Moreover, Lowry does not challenge his conviction for eleven counts of violation of a protection order, for acts that occurred contemporaneously with the threats.

■ Lowry also argues that the trial court erred in denying the motion for directed verdict on the arson charge. Lowry first contends that nothing in the record demonstrates whether or not the jury was properly instructed regarding the arson charge. However, the record reflects that the jury instructions were agreed to and given without objection. Lowry also contends that there is insufficient evidence to support the arson conviction because the State failed to demonstrate that the fire was set intentionally so as to overcome the common-law presumption against arson.

Arson may be proved by circumstantial evidence, properly connected. *Bush v. State*, 250 Ark. 224, 464 S.W.2d 792 (1971). The State had the burden of proving that the burning was a result of a willful act. *Id.* In *Bush*, the supreme court upheld a conviction for arson where there was adequate evidence to show motive, threats, overt acts to carry out threats, inadequate explanation of suspicious circumstances tending to show guilt, and the unlikelihood of other possible causes, which served to connect the circumstances and exclude any other reasonable hypothesis. *Id.* (finding that appellant was angry because he had discovered another man in bed with his girlfriend; that he admitted to having gasoline in the house; and that other sources of the fire were not likely).

■ Here, as in *Bush, supra,* there are motive, overt acts, threats, and inadequate explanation of suspicious circumstances. First, Lowry's motive is clear. He was upset because Lewellen would not talk to him or see him. Next, Lowry had made several threats regarding burning Lewellen's house. He had also told her of at least three instances in which he had considered burning his own property for insurance proceeds, and the fire chief testified that Lowry's residence had burned a few years earlier. Lowry was spotted near the scene moments after the fire had started, yet denied that he had been at or the near the scene. Officers Baugh and Preator spotted at Lowry's home the brown and black hiking boots they had earlier observed on a person hiding behind a truck near the scene of the fire. They also identified Lowry's truck, a tan Chevrolet with a ladder rack on the back. Lowry points out that there was no evidence about how the fire was started, and therefore, the State did not show that it was intentionally started. While the fire chief testified that he could not determine how the fire started, he did state that a fire started with gasoline makes a whooshing noise, while an electrical fire makes a popping noise. Lewellen testified that the fire roared and made a whooshing sound. The cars also became immediately engulfed in high flames, which is consistent with a gasoline-accelerated fire as opposed to an electrical fire. There was also evidence that gasoline poured from both cars. We conclude that there was sufficient circumstantial evidence, properly connected, to support the conviction for arson.

Lowry next argues that the trial court erred in admitting the July 6, 2002 letter. Arkansas Rule of Evidence 402 (2004) pro-

vides, "evidence which is not relevant is not admissible." Relevant evidence means having any tendency to make any fact that is of consequence to the determination of the action more or less probable. Ark. R. Evid. 401 (2004). A trial court's ruling on relevancy will not be disturbed absent an abuse of discretion. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003).

During the State's case-in-chief, the letter was clearly not relevant. The letter was unsigned, and simply stated, "thanks for cleaning up the lake lot, and by the way I do swallow." This crude sexual reference suggests that the letter may have been written by a woman. Therefore, the letter was not relevant to any alleged harassment committed by Lowry. The State argues that Lowry was prohibited from harassing Lewellen, and also from directing third parties to do so for him. There was no proof presented that Lowry directed anyone to send this letter to Lewellen. However, during the defense's case-in-chief, Rhonda admitted writing the letter and read it to the jury. At this point, the contents of the letter became cumulative. Thus, any error is harmless because Rhonda's testimony merely mirrored what Sandra had already explained to the jury. *See Lewis v. State*, 74 Ark. App. 61, 48 S.W.3d 535 (2001) (stating that prejudice is not presumed and there is no prejudice when the evidence admitted is merely cumulative).

Lowry also argues that the trial court erred in admitting evidence of vandalism to Lewellen's personal property. Arkansas Rule of Evidence 402 provides, "evidence which is not relevant is not admissible." Relevant evidence means having any tendency to make any fact that is of consequence to the determination of the action more or less probable. Ark. R. Evid. 401 (2004). A trial court's ruling on relevancy will not be disturbed absent an abuse of discretion. *Barrett, supra.*

Lowry contends that the trial court erred in admitting testimony regarding the shredding of Lewellen's patio furniture and the "keying" of her truck because there is no evidence that he was in any way connected to either of these events. We disagree. There was evidence that Lowry had engaged in a number of harassing tactics throughout the course of this case. Regarding the keying incident, Lewellen testified that she first heard Rhonda driving by honking as she always did in order to annoy her. She then heard a diesel engine. Lowry's truck has a diesel engine. After discovering that her car had been keyed, Lewellen filed a report

and left to go to work, where she saw Lowry parked down the hill from her home. He then waved and laughed at her. This evidence shows that Lowry was in the vicinity when the acts were committed and has a tendency to show that he engaged in conduct to harass Lewellen. Although the evidence regarding the patio furniture does not have the same degree of connection to Lowry, we find that the trial court did not abuse its discretion in admitting the testimony. Again, Lowry was on trial for harassing Lewellen and repeatedly violating a no-contact order. The evidence of damage to her personal property, which began after she and Lowry separated, had a tendency to show that he was engaging in conduct in order to harass her.

Lowry next argues that the trial court erred in denying his motion for a continuance. We conclude that the argument has merit under the circumstances of this case. The grant or denial of a motion for continuance is within the sound discretion of the trial court, and the trial court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Anthony v. State*, 339 Ark. 20, 2 S.W.3d 780 (1999). The trial court may grant a continuance only upon a showing of good cause and only for so long as necessary. *Godbold v. State*, 336 Ark. 251, 983 S.W.2d 939 (1999). When a motion for continuance is based on lack of time to prepare, the appellate court will consider the totality of the circumstance. *Green v. State*, 354 Ark. 210, 118 S.W.3d 563 (2003); *Wood v. State*, 75 Ark. App. 22, 53 S.W.3d 56 (2001). The burden of demonstrating prejudice is on the appellant. *Green, supra.*

The evidence that was submitted to Lowry two days before trial was voluminous and included: (1) a report from the fire inspector; (2) a recorded statement given by Lowry on the night of his arrest; and (3) a copy of Lowry's phone records. At the hearing on the motion, although the trial court denied the motion for continuance, the trial court recognized that Lowry's counsel may be prejudiced by the admission of information that she received late, and commented that it would entertain a motion to disallow the use of that evidence during the trial. The State argues that the only evidence that was introduced was a copy of Lowry's phone records, which were admitted without objection and only after Lowry made reference to them.

Here, unlike in *Wood, supra*, it was the State, and not appellant, who was responsible for the last-minute disclosure of significant discovery documents and records related to Lowry's

case. Lowry's counsel advised the trial court that she had not had time to adequately review the material or consult with her client about it. She contended that it would adversely affect her defense strategy. While the supreme court has usually found reversible the trial court's denial of continuance based upon lack of preparation time where counsel has been recently appointed, *see* Anthony, *supra*; Greene *v. State*, 335 Ark. 1, 977 S.W.2d 192 (1998); *Gonzales v. State*, 303 Ark. 537, 798 S.W.2d 101 (1990), the last-minute dumping of voluminous and crucial discovery under the circumstances of this case amounts to an equivalent deprivation of preparation time. We conclude that the trial court erred in denying Lowry's motion for continuance.

For his last point on appeal, Lowry argues that it was error for the trial court to permit James Heath to testify when he was not disclosed as a witness prior to trial. Although it is an issue that will not arise on retrial because Heath is now known to the defense, we conclude that it is a further basis for reversal of this case, based in essence upon the State's conduct in discovery proceedings.

Arkansas Rule of Criminal Procedure 17.1(a)(i) requires the prosecuting attorney to disclose to defense counsel the names and addresses of persons the prosecutor intends to calls as witnesses. It is not error for the court to permit the State to present witnesses without giving the requested notice, if they were in the nature of rebuttal witnesses. *Perkins v. State*, 258 Ark. 201, 523 S.W.2d 191 (1975). If the prosecuting attorney fails to comply with the rules of discovery, the trial court may permit discovery of the material not previously disclosed, grant a continuance, prohibit the party from introducing the undisclosed evidence, or enter any other order deemed proper under the circumstances. Ark. R. Crim. P. 19.7 (2004). When evidence is not disclosed during pretrial discovery, the appellant bears the burden of proving that the omission was sufficient to undermine the confidence in the outcome of the trial. *Scroggins v. State*, 312 Ark. 106, 116-17, 848 S.W.2d 400, 405 (1993).

In this case, the trial court allowed James Heath to testify during the State's case that he observed gasoline pouring from the vehicles when he raised them for towing. The State acknowledged that they had Heath identified as a witness well in advance of the trial and ready to testify, but chose not to disclose this to Lowry. Although intended as a rebuttal witness, the State decided to call Heath in its case-in-chief after Lowry's counsel

suggested during opening statements that Lewellen could have planted the gasoline after the fire because there was no gasoline odor at the scene initially. Our supreme court has upheld the admission of evidence during the State's case-in-chief, although that procedure would otherwise be improper, where the defense "opened the door" to the evidence during opening statements. *Chenault v. State*, 252 Ark. 144, 484 S.W.2d 887 (1972) (permitting character evidence during direct where the defense discussed the decedent's character during opening statements). However, Heath's testimony was neither in direct conflict with counsel's statement nor was he a rebuttal witness, and it was improper to allow this testimony in the State's case. We further do not agree that Lowry "opened the door" during opening statements.

Accordingly, we reverse and remand for a new trial because the trial court abused its discretion by failing to grant a continuance when counsel for Lowry had received a voluminous amount of the State's discovery just days prior to the trial, which materially affected the defense's trial strategy and severely limited counsel's ability to prepare for trial. Further, we hold that the trial court erred in permitting James Heath to testify in the State's case where he was not disclosed to Lowry as a witness prior to the trial.

Reversed and remanded.

BIRD, GRIFFEN, and VAUGHT, JJ., agree.

HART and CRABTREE, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. I agree with the majority that error occurred during the prosecution of Michael Lowry for arson, first-degree stalking, and eleven counts of violation of a protection order and that the case should be remanded for a new trial. I respectfully dissent, however, from the majority's conclusion that the evidence was sufficient to support Lowry's convictions for arson and first-degree stalking.

In arson cases, the State must overcome the common-law presumption against arson, which requires that the State must prove not only a burning, but also that the burning was by the willful act of some person criminally responsible for his acts and not by natural or accidental causes. *Ross v. State*, 300 Ark. 369, 779 S.W.2d 161 (1989). In support of the claim that there was sufficient evidence to support the arson conviction, the majority cites to *Bush v. State*, 250 Ark. 224, 464 S.W.2d 792 (1971), in

which the court noted that arson may be proved by circumstantial evidence and held that "there was adequate evidence" in that case "to show motive, threats, overt acts to carry out the threats, inadequate explanations of suspicious circumstances tending to show guilt, and unlikelihood of other possible causes of the conflagration, which serves to connect the circumstances and exclude any other reasonable hypothesis than the appellant's guilt." *Bush*, 250 Ark. at 229, 464 S.W.2d at 795. I note that in its description of *Bush*, the majority omits what I believe was the most salient fact in that case — that Bush was observed sprinkling gasoline on the floor of the burned residence immediately prior to the fire.

The majority concludes that, as in *Bush*, there was "motive, overt acts, threats, and inadequate explanation of suspicious sources" to show that Lowry committed arson. In considering the evidence, the majority states that Lowry had the motive to commit arson; that he had threatened to burn Lewellen's residence; that he told Lewellen that he had considered burning his own property for the insurance proceeds; that Lowry's residence had previously burned; and that Lowry's truck and a person wearing Lowry's boots were seen near the scene of the fire even though Lowry denied being there. The majority also notes the testimony of the fire chief that he could not determine how the fire started but that a gasoline fire makes a "whooshing" noise while an electrical fire makes a "popping" noise, and the majority notes Lewellen's testimony that the fire roared and made a "whooshing" sound. But unremarked upon by the majority in its analysis of the sufficiency of the evidence was that there was no evidence, which was present in *Bush*, of "the unlikelihood of other possible causes of the conflagration, which serves to connect the circumstances and exclude any other reasonable hypothesis than the appellant's guilt."

This case involved the burning of two cars, not a house as in *Bush*. As noted by the majority, the fire chief testified that improperly installed electrical items may cause a fire, and he did not know that a CD player and speakers were installed in Kimberly Lewellen's car on the day of the fire. And as noted by the majority, gasoline was leaking from both cars. No doubt, when the gasoline ignited, it made a "whooshing" sound. But how did the fire begin? Did the gasoline in Kimberly's car ignite following an electrical fire in her car? The fire chief did not know how the fire started, and he testified that "[i]f there's a secondary source of ignition

around" an electrical short, "that's usually what catches the second time." And according to Lewellen, Kimberly's car burned first and caused the second car to catch fire. Thus, there was no evidence that the ignition of the gasoline and hence Kimberly's car was the result of a willful act, or at least, as the *Bush* court put it, there was no evidence showing the unlikelihood of other possible causes of the conflagration. Consequently, the evidence was insufficient to overcome the common-law presumption against arson, and Lowry's arson conviction should be reversed and dismissed.

Furthermore, I conclude that the evidence was insufficient to support the stalking conviction. The stalking statute provides in part that "[a] person commits stalking in the first degree if he purposely engages in a course of conduct that harasses another person and makes a terroristic threat with the intent of placing that person in imminent fear of death or serious bodily injury or placing that person in imminent fear of the death or serious bodily injury of his or her immediate family," and further, that he "[d]oes so in contravention of an order of protection . . . protecting the same victim or victims. . . ." Ark. Code Ann. § 5-71-229(a)(1)(A) (Repl. 1997). In analyzing the sufficiency of the evidence to support the conviction, the majority notes that on the day before the protection order was entered, Lowry was involved in an altercation with Lewellen. That incident, however, occurred before the protection order was in effect, thus precluding its use in our analysis, as the stalking statute requires that the threat be made in contravention of a protection order. The majority also notes Lowry's statements to Dustin Tuberville and Kimberly on the day before the fire and Lowry's chasing of Dustin and Kimberly the day after the fire. My reading of the stalking statute is that it requires that the terroristic threat must be communicated to the *victim* of the crime, in this case, Sandra Lewellen, which did not happen in either instance relied upon by the majority.

Simply put, the majority does not point to any terroristic threats made to Lewellen that were made in contravention of a protection order. Given the absence of evidence, I would hold that the evidence was insufficient to support Lowry's stalking conviction and dismiss this conviction as well.

TERRY CRABTREE, Judge, dissenting. The majority has reversed this criminal case holding that the trial court erred in denying appellant's motion for a continuance based on a discovery violation and that the trial court erred in permitting the State to call a

witness in its case-in-chief who was not disclosed to appellant in advance of trial. I cannot agree to reverse based on the discovery violation because the record does not demonstrate any prejudice resulting from the State's tardiness. I also do not agree that reversal is warranted based on the non-disclosure of the witness. This witness's testimony is properly characterized as rebuttal testimony, and any error that flowed from allowing this witness to testify in the State's case-in-chief was harmless. Therefore, I respectfully dissent.

Appellant was charged with first-degree stalking, arson, and eleven counts of violating a protective order. His case was set for trial on Wednesday, June 4, 2003. Late on the afternoon of Monday, June 2, the State delivered to appellant's counsel's office a handwritten report from the fire inspector, a copy of the recorded statement made by appellant the night of his arrest, and copies of appellant's own cellular-phone billing statements.[1] The next day, appellant filed a motion for a continuance, and the court conducted a hearing on the motion that afternoon. Appellant's chief complaint concerned the billing statements. Counsel argued that she believed the State was going to introduce the phone records specifying the dates on which phone calls were made, and she argued that she would "not have time to cross-reference to see if the dates were accurate" or to consult with appellant about the records. Counsel further represented that she did not exactly know what was in the packet, as she had merely opened it and had seen that it contained phone records. The court expressed the desire to see what the packet contained, but because counsel had not brought the materials to the hearing, the court inquired as to whether it consisted of "three pages or a hundred." Appellant responded that there were twenty pages. The trial court noted that appellant was entitled to receive materials in time to make beneficial use of them, but instead of granting a continuance, the court stated that it would entertain a motion to exclude any evidence that was turned over late and resulted in prejudice. The court ruled:

> I'll leave the case on the docket. If — if something that you received Monday or Tuesday of this week, if you want to make a

---

[1] On the morning of June 2, the State had also provided the defense with a certified transcript of appellant's bond hearing. An uncertified transcript of this hearing had already been been provided; the only difference between the two transcripts was that the latter bore the court reporter's certificate.

motion on it at the time and I determine that it is something that prejudiced your preparation because you received it so late that you could not properly prepare for it, then I may exclude that evidence. That's, we'll just have to take it up at the time. If they seek to introduce something and you say, "I got it on Tuesday and Wednesday and I could not prepare," and you demonstrate that it prejudices your client's defense, then I will consider not allowing them to use it at that time.

Appellant contends on appeal that the trial court should have granted a continuance. In making this argument, appellant complains only about the State's tardiness in turning over the fire inspector's report and the phone records. He makes no argument with regard to the recorded statement he gave to the police. By way of prejudice, appellant states baldly, without elaboration, that he was "prejudiced by his trial counsel's lack of time to prepare."[2]

When a party fails to comply with a discovery rule, the court may exercise any of the following options: order that party to permit the discovery or inspection of materials not previously disclosed; grant a continuance; prohibit the party from introducing the material; or enter another order that the court deems appropriate under the circumstances. *Hicks v. State,* 340 Ark. 605, 12 S.W.3d 219 (2000). It is within the trial court's discretion which sanction to employ. *Id.* A prosecutorial discovery violation does not automatically result in reversal. *McNeese v. State,* 326 Ark. 787, 935 S.W.2d 246 (1996). When a discovery violation occurs, the error is reversible only when the violation results in prejudice to the appellant. *Johnson v. State,* 333 Ark. 673, 972 S.W.2d 935 (1998). When the prosecutor fails to provide information, the burden is on the appellant to demonstrate that the omission was sufficient to undermine confidence in the outcome of the trial. *Barnes v. State,* 346 Ark. 91, 55 S.W.3d 271 (2001).

In this case, the trial court chose the option of excluding evidence upon a showing of prejudice. I see nothing in this record to indicate that this approach was not adequate to ensure the fairness of trial. The majority concludes otherwise, describing the materials as "voluminous" and "crucial." In reality, however, the materials were neither, and the record demonstrates not a smidgeon of resulting prejudice. And, contrary to the majority's

---

[2] Appellant is represented by different counsel on appeal.

assertion, appellant has never and does not now make any claim that his defense strategy was altered on account of these materials.

When the phone records are examined, one learns that they consist of twenty-one pages and include appellant's cellular phone bills for the months of June, July, August, and September of 2002. Only eleven of those pages, however, list the calls that were placed from appellant's phone. It is significant that these were appellant's *own* phone bills, which he had full access to and possession of even without the State providing them to him. And, it is clear from appellant's testimony at trial that he knew in advance that the State had subpoenaed his records. Indeed, appellant testified that, after learning of the State's subpoena, he examined his phone bill and identified two calls that he had mistakenly made to Ms. Lewellen, and he said that he informed the police of this fact. Although the trial court left it open for appellant to object to the admission of this evidence should there have been insufficient time to prepare, appellant's phone records were admitted into evidence *without objection*. As a consequence, I find it impossible to conclude that the State's delay in delivering appellant's phone bills caused any prejudice. Moreover, the State's failure to disclose information already in the possession of a defendant does not result in reversible error. *See Johninson v. State*, 317 Ark. 431, 878 S.W.2d 727 (1994).

With regard to the fire inspector's report, it was not introduced into evidence, and because appellant failed to proffer the report, this court cannot accurately gauge whether the State's delay caused any prejudice to appellant. A review of the record, however, reveals no claim by appellant that he was in any way surprised by the contents of the report. A review of appellant's cross-examination of the fire chief, who was on the State's witness list, does not show that appellant suffered from any lack of preparation time. In fact, appellant also called the fire chief as a defense witness. Appellant alleges in his brief that he was prejudiced, but he makes no definite statement as to *how* he was prejudiced. However, prejudice must be shown, not merely alleged. *Barnes v. State, supra*. Because appellant has not demonstrated any prejudice, there is no cause to reverse.

The record also reflects no prejudice resulting from the State's late delivery of the tape recording of appellant's statement. Although appellant presents no argument on appeal with regard to the statement, I feel it necessary to discuss this evidence in light of the majority's notion to consider the "totality of the circumstances." Appellant's statement was brief, amounting to little more

than a denial that he committed the arson. The content of the statement was fairly summarized in an affidavit that appellant had access to well before trial. More importantly, appellant raised *no objection* to the officer's testimony recounting the statement, even though the trial court had indicated that it would exclude such evidence if prejudice were shown.

In sum, the record in this case does not support the majority's description of the discovery violation as a "last-minute dumping of voluminous and crucial discovery." Also, there is nothing in this record showing that the State's delay in turning over these materials resulted in any prejudice to the appellant. Although the State's failure to comply with discovery in a more timely fashion should not be lightly dismissed, it is not enough for there to be a discovery violation. Reversal is merited only when the State's tardiness results in discernable prejudice to the appellant. Because no hint of prejudice has been shown, the State's discovery violation does not warrant reversal in this case, and the majority errs in reaching a contrary conclusion.

The majority is also mistaken by reversing the trial court's decision allowing the State to present the testimony of James Heath in its case-in-chief. This issue revolves around the officers' testimony, which appellant was aware of before trial, that the officers detected no odor of gasoline when they first responded to the fire, but that the odor of gasoline was prominent when they later returned to the scene. After speaking with one of the officers after he had been interviewed by appellant's counsel, the prosecution anticipated that appellant might claim that Ms. Lewellen had poured gasoline in the area after the officers completed their initial investigation. Therefore, the prosecution procured Mr. Heath as a witness for the purpose of presenting his testimony in rebuttal, should appellant actually claim that Ms. Lewellen was responsible for the presence of the gasoline. As predicted, appellant's counsel did raise this theory at trial. In her opening statement, which began by portraying Ms. Lewellen as a woman scorned who had immediately blamed appellant for starting the fire when the officers arrived, counsel stated:

> [The officers] got a call to go back out there and when they went back out there the smell of gasoline was so strong, there was gasoline all over the side of that trailer, all over the side of Kim Lewellen's trailer. They were looking for accelerants. They were looking for gasoline, didn't see any gasoline out there when they first went out. But when they got called back out there Kim Lewellen wasn't

there, her daughter wasn't there. Kim — Sandy's sister wasn't there that was there previously. Everybody was gone. But there was gasoline pulled all over the trailer, something they didn't see the first time. They couldn't find any trace of accelerants the first time they went out there. *It was just another attempt of a scorned woman trying to get even and trying to put him in jail because if she couldn't have Mike then nobody would.*

Appellant also emphasized on cross-examination of the officers that they detected the odor of gasoline not the first, but only the second time they were at the scene. This theory was also mentioned by appellant's counsel in her closing argument.It is thus clear that appellant was insinuating that Ms. Lewellen had poured gasoline in the area in an effort to further implicate appellant in the arson by making it appear as if gasoline had been used to ignite the fires.

Mr. Heath works for a towing company, and he had towed the burned vehicles. He testified that gasoline had poured out from the gas lines of the vehicles and onto the ground as he hoisted them up them from the rear to place on a flat-bed truck.

The issue raised on appeal is that the trial court erred in allowing the State to offer Heath's testimony in its case-in-chief because the State had not disclosed him as a witness before trial. The State is required, upon timely request, to disclose to the defendant the names and addresses of the persons it intends to call as witnesses at trial. Ark. R. Crim. P. 17.1(a)(i). However, the State is not required to disclose rebuttal witnesses during discovery. *Kincannon v. State,* 85 Ark. App. 297, 151 S.W.3d 8 (2004). The rationale is that, until the defense's case has been presented, the State cannot know of any witnesses needed for rebuttal. *Id.* Rebuttal evidence is evidence that is offered in reply to new matters, even if it overlaps with the evidence presented in the State's case in chief, as long as the testimony is responsive to evidence presented by the defense. *Id.*

In this case, the State anticipated, but could not be certain, that appellant would claim that Ms. Lewellen was responsible for gasoline being spread about her home after the fire. The testimony of Mr. Heath was designed to account for the presence of the gasoline that was subsequently detected, should appellant make an issue of it at trial. Appellant did advance this theory, and Heath's testimony was responsive to appellant's suggestion that Ms. Lewellen intentionally poured gas in the area. Therefore, Heath's testimony is properly characterized as rebuttal testimony, which

the State was not obliged to disclose in advance of trial. Since this was rebuttal testimony, however, it was not proper for the State to introduce it in its case-in-chief. However, evidence that it presented out-of-turn can be harmless. Here, appellant made the error harmless by advancing his theory impugning Ms. Lewellen in his opening statement and in his cross-examination of the officers. *Chenault v. State,* 253 Ark. 144, 484 S.W.2d 887 (1972).

I also perceive no unfair prejudice to appellant in that he later offered evidence countering Mr. Heath's testimony and supporting his theory that Ms. Lewellen had poured gasoline on the trailer. When appellant called Richard Blair, the fire chief, as a witness for the defense, he elicited testimony that the firemen had sprayed water on the trailer as a precautionary measure. In light of Mr. Heath's testimony that gasoline leaked from the vehicles onto the ground, the testimony of Blair served to support the inference that any gasoline found on the trailer was put there after the fire. In addition, when Blair had testified on behalf of the State, he stated that, if gasoline is used to start a fire, he would not expect to find evidence of it afterwards because gasoline burns fairly quickly and thoroughly. In short, appellant's suggestion that Ms. Lewellen was responsible for the after-the-fact presence of gasoline remained viable despite Heath's testimony. Because any error resulting from Mr. Heath's testimony was harmless and nonprejudicial, I dissent from reversing appellant's arson conviction on this basis.

I would affirm.